## Eddington-Griffitts Construction Company v. Ireland, et al.

### (Decided June 18, 1915.)

### Appeal from Mason Circuit Court.

1. Contracts—Construction Work—Sub-contractor—Work Not Specifically Mentioned Must Be Performed By, If of the Character Included in the General Description Contained in Contract.—A subcontractor, who by written contract undertakes to perform for a

principal contractor, all steam-shovel work preparatory to the double-tracking of a railroad company's line for a given distance, cannot excuse its failure to perform a part of such work on the ground that it was not specifically mentioned in the contract, where such work was undoubtedly steam-shovel work, all of which character of work the contract required the sub-contractor to perform.

2. Contracts—Failure of Contractor to Promptly Pay Sub-contractor for Work—When It Will Not Excuse Failure of Sub-contractor to Perform Part of the Work It Contracted to Do—Damages Sustained by Contractor from Such Failure of Sub-contractor—When Recoverable.—The failure of a sub-contractor to perform part of the work required of it by its contract with the principal contractor, cannot be excused upon the ground of the failure of the latter to pay it for other work done under the contract, where it was made to appear from the evidence that the contractor was delayed in obtaining the payments from the railroad company upon the monthly estimates under his contract with it, because of the sub-contractor's delay in performing the work required of it. And when the contractor was put to increased expense or otherwise sustained a loss by reason of the failure of the sub-contractor to fully perform the work for the railroad company it undertook to perform, the contractor was properly permitted to recover such damages from the sub-contractor as he thereby sustained, and to have same credited on the amount due the sub-contractor for such work as it had actually done, and for which it had not been paid by the contractor.

ALLAN D. COLE and GREEN, WEBB & TAIT for appellant.

J. M. COLLINS and THOMAS D. SLATTERY for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by the appellee, James Ireland, doing business as James Ireland & Company, against the Chesapeake & Ohio Railway Company, the appellant Eddington-Griffitts Construction Company, and others, its principal object being to recover of the Chesapeake & Ohio Railway Company $13,000.00, with six per cent. interest from October 1, 1911, alleged to be a balance due appellee upon a contract whereby he undertook to construct and did construct for it certain work, consisting of excavation, grading and other like work, preparatory to the laying of double tracks along its line of railroad between Vanceburg and Carr's Station, in Lewis County, Kentucky; it being alleged in the petition that the work was completed by appellee as required by the terms of the contract and duly accepted by the Chesapeake & Ohio Railway Company,

which paid appellee at various times all that was due
him for the work performed by him under the contract,
except the balance of $13,000.00 mentioned. The appel-
lant, Eddington-Griffitts Construction Company, and
other persons made defendants to the action, were nec-
essary parties because there were various sums due
them for material furnished and labor done as sub-
contractors and otherwise for appellee under his con-
tract with the Chesapeake & Ohio Railway Company,
referred to, for which they were, respectively, asserting
claim.

The Chesapeake & Ohio Railway Company answered,
admitting that appellee and his sub-contractors and em-
ployes completed the construction work required by its
contract with appellee and according to its terms, ex-
cept a small part of same, from the doing and comple-
tion of which appellee was released by it; denied that
there was due or owing to appellee in payment of such
work $13,000.00, but admitted an indebtedness to him
therefor of $12,505.26, which, upon its motion, it was
allowed to pay into court, to be distributed to whomso-
ever the court might direct.

The answer was made a cross-petition against the
Eddington-Griffitts Construction Company and other
defendants in the petition, asking that they be required
to set up and litigate with the appellee whatever claims
they were respectively entitled to assert, under lien or
otherwise, against the fund which it paid into court.

By an amended petition appellee admitted that the
indebtedness of the Chesapeake & Ohio Railway Com-
pany to him was $12,505.26, as averred in its answer,
instead of $13,000.00 as alleged in the petition. The case
was referred to the master Commissioner to hear proof
upon and report the various claims for which liens were
asserted against the fund in question.

The appellant, Eddington-Griffitts Construction Com-
pany, by its answer to the petition, which was made a
counter-claim against appellee and a cross-petition
against its co-defendants, Chesapeake & Ohio Railway
Company and others, alleged that by contract with the
appellee, James Ireland, it agreed and undertook to
place upon the work of construction that the latter had
contracted to do for the Chesapeake & Ohio Railway
Company sufficient of its construction equipment for
that purpose, and to do all the shovel work necessary to
be done in such construction, for which it was to be paid

by appellee certain prices set forth in the contract and. in its answer; that it performed the work which it undertook to do for appellee according to the terms of the contract and was paid by the latter therefor various sums, leaving, as alleged, due it the amount and balance of $18,433.94, $4,684.71 of which was made up of charges at the rate of one cent for each 100 feet of "overhaul," in excess of a distance of 1,000 feet, performed on certain parts of the work. For the $18,433.94 thus alleged to be due it, appellant asserted a lien, as allowed by statute in such cases, and asked judgment for its enforcement, as well as a personal judgment against appellee.

Appellee, both by amended petition and reply, controverted the claim of the appellant, Eddington-Griffitts Construction Company, to the extent of denying any liability on his part for the item of $4,684.71; but admitted his indebtedness to appellant for some part of the $13,759.25 remaining of the $18,433.94 of the latter's claim, without being able to state definitely the amount of such indebtedness; alleged, however, that such indebtedness should be credited upon the amount of damages resulting to appellee from appellant's failure to perform certain parts of the work required of it by its contract with appellee. That is, it was alleged that by reason of appellant's failure to do the necessary steam shovel work at Stamper's fill, required by its contract with appellee, consisting of about 10,000 yards of earth excavation and overhaul, appellee was delayed in completing his contract with the Chesapeake & Ohio Railway Company and compelled to procure equipment at great cost, expend large sums of money in getting such equipment on the ground, and for labor, in doing the work which he was compelled by his contract with the Chesapeake & Ohio Railway Company to perform himself, after appellant's failure to do so; by all of which he was damaged in the sum of $15,000.00.

It was further alleged that by reason of appellant's failure to comply with its contract in the particular mentioned, appellee was damaged $15,000.00 by reason of his being prevented from taking other contracts and doing other work for the Chesapeake & Ohio Railway Company after September 20, 1911, the date on which his contract with that company, in which appellant undertook to aid him, was to have been completed, from which he expected and would have received large profits;

and that appellant, at the time of entering into the con-
tract it made with appellee referred to, knew that the
latter had in contemplation the taking of other contracts
and doing of other work for the Chesapeake Railway
Company, following its completion, from which he would
have received such profits.

All affirmative matter of appellee's amended peti-
tion and reply was controverted by appellant's answer
and rejoinder, and in the latter pleading it was, in sub-
stance, alleged in explanation of its failure to do the
steam shovel work at the Stamper fill: (1) That it was
not required of it by its contract with appellee; (2) That
appellee contracted with one Simpson to do the work
at Stamper's fill; and (3) That it did not continue the
work at Stamper's fill because of appellee's violation
of his contract with it, in failing to pay it with the
promptness required by the contract, for the work it
had previously done for the Chesapeake & Ohio Railway
Company.

There was a trial by jury of the matters in issue be-
tween appellant and appellee, resulting in the follow-
ing verdict:

"We, the jury, find for the defendant $14,330.97,
as instructed by the court.

"We, the jury find for the plaintiff $10,500 less
$3,500.00.

"J. A. COOPER, Foreman."

The $7,000.00 awarded appellee by the verdict was
credited on the $14,330.97 it awarded appellant, and
judgment entered against appellee in favor of appellant
for the difference of $7,330.97. Appellant, complaining
of that judgment and the refusal of the circuit court to
grant it a new trial, by this appeal seeks its reversal.

The facts, as we understand them from our exami-
nation of the evidence, are: That appellee, after enter-
ing into the contract with the Chesapeake & Ohio Rail-
way Company to do certain construction work, prepara-
tory to the double tracking of its railroad line between
Vanceburg and Carr's Station, in Lewis County, found
that there was considerable excavating and filling re-
quired which could only be done with the steam shovel
and heavy equipment necessary to its operation. As he
did not own such equipment himself and it was owned
by the appellant, Eddington-Griffitts Construction Com-
pany, he made with it the written contract set out in
the pleadings, by which appellant was to do all the

steam shovel work required of appellee under its contract with the railway company on the line of construction between Vanceburg and Carr's Station, within the time limit fixed in appellee's contract with the railway company, viz.: September 20, 1910. Its contract bears date April 6, 1910. In May, 1910, the appellant moved its equipment to the work and began its performance. Its first work was done on what is known as the "Rome hill" cut, which seems to have been the largest shovel job on the line, as it consisted of some 45,000 cubic yards of excavation. The work at that point was not completed by appellant until about March 1, 1911, which was more than five months after the expiration of the date upon which all the work it was to perform, was required by the contract between appellee and the railway company to be completed.

Before its completion of the work on the Rome hill cut appellant announced that it did not intend to do the other work embraced in its contract with the appellee. At the solicitation of appellee it finally concluded to go on with the work, and moved its equipment and machinery to the Meldhal "borrow pit." The work to be done at this place consisted approximately of 20,000 cubic yards of excavation and fill. This work was completed by appellant in the latter part of May, 1911, about eight months after the time it had agreed to have the entire work finished. There yet remained 10,000 cubic yards of similar work to be done under the contract of appellant with appellee, at what is known as the "machine branch" or Stamper's fill.

The work at Stamper's fill appellant refused to do, notwithstanding appellee's insistence that it proceed with it. He seems to have repeatedly told it that its failure to do the work would be disastrous to him in the extreme, as he had not the equipment with which to do the work and the job was too small a one to procure another contractor who possessed the equipment to do it; and that in the event of appellant's failure to perform the work both he and it would be forced to abandon their contract with the railway company and lose their reserve percentage, which was then held by that company, as well as all the moneys then in its hands due them for work previously completed, which amounted to several thousand dollars, and that this money the railway company would have the right to use in employing other contractors to finish the work of

construction. At this time appellant did not deny that the Stamper fill work was embraced within its contract.

In May, 1911, and while appellant was still at work on the Meldhal borrow pit, Ireland, who was at Maysville, some thirty miles distant, and confined to his home by illness, sent appellant a check on its part of the estimate for the month of May. It happened that at the time of giving the check his deposit at the bank upon which it was drawn had been reduced a few hundred dollars below the amount required to meet the check, and it went to protest. It turned out that the overdraft made upon appellee's account by the check resulted from a mere inadvertence or oversight, and it was almost immediately rectified, but the fact that it went to protest seems to have been at once seized upon by appellant as a means to justify its refusal to perform the work at the Stamper fill, required by its contract with appellee; and it not only discontinued work but positively declared that it would never proceed with it. Even then appellant did not claim that the Stamper fill work was not included in the work required of it by its contract with appellee, and the only reason it gave for its refusal to go on with the work was the failure of appellee to pay it immediately upon the receipt of his voucher from the railway company. This is made plain by the deposition of E. W. Eddington, appellant's president, and also that of J. A. Kreis, another of its officers. Their depositions also show that the contract between appellant and appellee as construed by them included the steam shovel work necessary at Stamper's fill.

In the situation brought about by the refusal of appellant to perform the Stamper fill work, appellee, being unable owing to the smallness of the job and the lateness of the season, to get another contractor to undertake it, or to lease a plant with which to do the work, was compelled to purchase the necessary steam shovel equipment in order to proceed with it. This he did at a cost of $11,000.00, and put it upon the work, and in that way and by appellees expending large additional sums for labor and otherwise, its completion was finally effected. About the time of appellees' purchase of the equipment mentioned, appellant filed its first mechanic's lien, which was for the $13,759.25, and this was followed a few days later by the filing of a second

lien, which was for the overhaul charges, amounting to $4,684.71.

The filing of these liens caused the Chesapeake & Ohio Railway Company to refuse the payment of any further estimates to Ireland, which rendered it impossible for him to continue the work. He, therefore, surrendered it, financially ruined, and the railway company thereupon took charge of and caused it to be completed. At that time, owing to the liens which had been filed by appellant, the railway company could not afford to pay appellee the $12,505.25 then due him for past work, and this amount, as previously stated, it paid into court after it was sued by appellee.

The record fails to furnish any legal excuse for appellant's refusal to do the work required at the Stamper fill. Manifestly, its failure to do that work cannot be justified on the ground that it was not included in the work required by its contract with appellee, for the contract required it to do *all the steam shovel work* on the entire line of railway to be constructed by appellee, and the work at Stamper's fill, it refused to perform, was undoubtedly steam shovel work. It is equally manifest from the evidence that the steam shovel work at Stamper's fill was not, as claimed by appellant, required of the sub-contractor Simpson under his contract with appellee. Simpson's contract with appellee, as it shows, was only for light grading and team work. He had no equipment for doing steam shovel work and was neither able nor expected to do that character of work. Such work appertained alone to the contract made by appellant with appellee, and it does not seem to have entered the mind of the former to set up a claim that the Stamper fill was to be done by Simpson, until this litigation arose between it and appellee.

It is further manifest from the evidence that appellant had no right to refuse to perform the Stamper fill work because of appellee's want of promptness in paying it for the other work done by it, as it is apparent from the evidence that appellee was delayed in obtaining payments from the Chesapeake & Ohio Railway Company upon the monthly estimates to be made under his contract with that company, on account of appellant's delay in performing the work required of it by its contract with appellee. The protesting of one of the checks given appellant by appellee in part payment for its work could not, of itself, have justified the abandonment

of the Stamper. fill work by appellant, as the matter was immediately rectified and made good by appellee.

If we are correct in the conclusions above expressed, there is no merit in the appellant's complaint of the refusal by the trial court of the peremptory instruction directing a finding for the appellant, asked by it at the conclusion of the evidence. There was no contrariety of evidence as to the fact that appellant was entitled to recover of appellee $14,330.97 of the claim asserted by it, hence so much of the verdict of the jury as allowed it that sum was properly directed by the trial court in the first instruction given. The only other matters necessary to be submitted to the jury were the questions whether appellant violated its contract with appellee in the particular claimed by the latter, and if so, the amount of damages resulting to appellee therefrom.

Owing to their number and length, the instructions given by the court are not copied in the opinion. We do not, however, regard them open to the objections urged by counsel for appellant, for, as a whole, they fairly and with unusual clearness advised the jury of the issues of fact submitted for their decision and all the law necessary for their guidance in arriving at a verdict.

While the evidence as to the issues submitted was conflicting, we are not prepared to say that they were not properly determined by the verdict of the jury. The record furnishing no cause for disturbing the verdict, the judgment is affirmed.