## Johnson, Administratrix, et al. v. Tackitt.

### (Decided January 23, 1917.)

### Appeal from Pike Circuit Court.

1. **Contracts—Ambiguity—Parol Evidence.**—When a written contract is ambiguous in its terms parol evidence is admissible to show what the parties had in contemplation by the language used, but neither parol evidence nor preliminary negotiations can be allowed to contradict or vary the terms of the contract.

2. **Contracts—Action For Breach of.**—Upon a breach of a contract by one party the other party may recover on the contract for the work already performed under the contract and for the loss of profits which he could have made but for the breach; or he may elect to waive the contract and recover upon a quantum meruit.

3. **Contracts—Action for Breach—Quantum Meruit.**—Where work was done under a contract, the one doing the work may recover on a

quantum meruit even though he be guilty of a breach, subject to the right of the other party to recover damages for the breach, if the work was beneficial to the defendant and accepted by him.

4. Evidence—Section 606, Subsection 2, Civil Code.—Subsection 2 of section 606 of the Civil Code of Practice forbids a party from testifying for himself not only concerning any verbal statements of a party who is dead when the testimony is given, but also concerning any transaction with, or thing done or omitted to be done by such decedent.

ROSCOE VANOVER for appellants.

J. S. CLINE and CHILDERS & CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On March 7th, 1912, W. B. Johnson and Sol Tackitt entered into the following written contract:

"Hartley, Kentucky, 3/7, 1912.
"I, W. B. Johnson, has this ................ ................ sold to Sol Tackitt, one job of drifting all the logs of Cole & Crane that is now in Long Fork or that may be put into said creek by Jany. 1, 1913.    All logs to be put where the back water will float logs easily above forks in pond.    Said logs to be delivered below mouth or out into channel of Main Shelby Creek for (25c) cents per log.    Said logs to be delivered by August 1st, 1913. Said payments to be made as logs is delivered as above on estimates agreed on.    Sol Tackitt is to have the use of splash dams during said time to splash said timber. W. B. Johnson reserves the right to use splash dams when Sol Tackitt is not operating said dams on Long Fork.

"(Signed)    W. B. JOHNSON,
                            SOL TACKITT."

On April 5th, 1912, so much of this contract as refers to the splash dam was modified by the following written contract:

"Hartley, Kentucky, April 5, 1912.

"This agreement made and entered into by and between W. B. Johnson, party of the first part, and Sol Tackitt and G. W. Tackitt, party of the second part;

"Witnesseth, that said W. B. Johnson releases and relinquishes all claims, rights, interests and title he or Cole & Crane has in and to the splash dam at said G. W. Tackitt's from this date for the said Tackitt to

repair said dam and to make a county road by said dam in good workman order. Said Sol Tackitt and G. W. Tackitt discharges the said W. B. Johnson and Cole & Crane from all damages, claims, demands, actions, causes of action by reason of said splash dam. Should the said Sol Tackitt refuse to deliver Cole & Crane logs, set out in contract between himself and W. B. Johnson, of date March 7, 1912, then in said event the said W. B. Johnson may proceed and operate said dam for splashing said logs only.

"W. B. JOHNSON,

SOL TACKITT,

G. W. TACKITT."

"Attest: GRANT TACKITT."

Tackitt worked under these contracts until in January, 1913, when he quit, having drifted out and delivered about 3,195 logs, and not having drifted out or delivered about 1,800 logs that were in Long Fork and its tributaries. After Tackitt quit the job, Johnson employed hands and drifted out the logs Tackitt had left, using the splash dam referred to in the contracts in so doing.

On March 28th, 1913, Tackitt brought this action against Johnson, alleging a breach of the contract by Johnson which prevented him from completing the contract, and seeking to recover the sum of $500.00 for logs which he had delivered and for which he had not been paid, the further sum of $440.00, for profits which he alleged he could have made under the contract, for delivering logs which, he alleged, Johnson wrongfully withheld and failed to put into Long Fork according to the contract, and the further sum of $200.00, for the wrongful taking and converting to his own use, by Johnson, of the splash dam referred to in the contracts.

Johnson, by his answer, traversed all of the allegations of the petition, except the execution of the contract, and, by counter-claim, alleged a breach of the contract by Tackitt, and sought to recover of him the sum of $1,500.00 damages therefor. Before the trial, Johnson died, and the action was revived in the name of his administratrix. Upon a trial by jury, a verdict was rendered in favor of Tackitt, for the sum of $1,000.00, and to reverse the judgment rendered thereon this appeal is prosecuted.

Appellant seeks a reversal because of alleged errors of the trial court in admitting incompetent evidence, in overruling her motion for a peremptory instruction, in the instructions given, and upon the ground that the verdict is against the evidence.

Before taking up these alleged errors, it will be necessary, first, to consider some preliminary questions with reference to the contract of March 7th, 1912. It is insisted, by appellee, that the contract is indefinite and ambiguous, as to the logs covered by it, which are described therein, as "all the logs of Cole & Crane that is now in Long Fork or that may be put into said creek by January 1st, 1913." Appellee contends that, by the parties, this clause was meant to include, not only Long Fork of Shelby Creek, but several of its tributaries, and that by the latter part of this provision, "or that may be put into said creek by January 1st, 1913," Johnson was obligated to put into said creek and its tributaries, between 6,500 and 7,000 logs. Appellant insists that none of the logs in the tributaries of Long Fork were included in the contract; that no definite number of logs were to be put in the creek, and that the contract is not ambiguous or indefinite.

The principle is settled that when a written contract is ambiguous in its terms, parol evidence may be introduced to show what the parties had in contemplation by the language used: 10 R. C. L. 1065; Jenkins v. Bass, 88 Ky. 397; but that neither parol evidence nor preliminary negotiations can be allowed to contradict or vary the terms of the contract. 6 R. C. L. 839.

As to whether this contract applied only to the logs on Long Fork, or to those in its tributaries as well, the contract is ambiguous and indefinite, for it may be construed either way, and parol evidence was competent to explain it; but to attempt to show by parol evidence that, by this provision of the contract, the parties had a definite number of logs in contemplation, and that, by the contract, Johnson had obligated himself to place in the creek a definite number of logs, would be to permit one party, by parol evidence and evidence of preliminary negotiations, to introduce into it a warranty, where none whatever exists, which is contrary to the rule. It is plain that the parties did not mean any certain number of logs, but that the contract, by its express terms, limits its application to the logs then in

the creek and an indefinite number of logs that might be put therein by January 1st, 1913. Clearly this was not a warranty, upon Johnson's part, to put any certain number of logs in the creek by that time, and such a warranty cannot be placed in the contract by parol evidence, and all evidence introduced to that effect was clearly incompetent.

Another provision of the contract, requiring consideration, is that with reference to the payments to be made as the work progressed. The contract provides, that payments are to be made at twenty-five cents per log as delivered, on "estimates agreed on." It does not provide, as appellee seems to have conceived and insisted upon, for a settlement and payment upon demand, for the exact number of logs that had at any time been delivered, nor was Johnson authorized to withhold payments until the contract was completed, when a controversy arose upon the estimates of what had been delivered; but appellee had the right to insist upon payments, to the extent that Johnson admitted in his estimate of the work done that he was indebted to the appellee, and if Johnson refused to make such payments and appellee was thereby prevented from carrying out his contract, as he alleges, he then had the right to elect to sue for a breach and recover on the contract, so far as he had performed, as well as for loss of profits, or he could have waived the contract and sued upon a *quantum meruit*. 7 Am. & Eng. Ency. of Law 153; 6 R. C. L. 1012, 1031; Marshall v. Craig, 1 Bibb 379; Rankin v. Darnell, 11 B. Mon. 30; Parrot v. Mex. Cent. Ry. Co., 34 L. R. A. (N. S.) 261; 9 Cyc. 688; Madison, Jackson, Estill Lumber Co. v. Coyle, 166 Ky. 108; Eddington Griffiths Co. v. Ireland, 165 Ky. 518. And even though the breach were appellee's, since his work had been accepted by and was beneficial to appellant, he could recover upon a *quantum meruit*, subject to appellant's right to recover damages, as asserted in her counter-claim, for appellee's breach. 9 Cyc, 645; Escott & Son v. White, 10 Bush. 169; Tandy's Assg. v. Hatcher & Co., 9 Ky. Law Rep. 150.

While appellee admits he quit the contract before completion, he attempts, in justification, to prove that, by Johnson's failure to pay during the progress of the work, upon estimates, he was prevented from carrying out his contract, and to support this contention there is

some evidence, but there was also evidence to the effect that Johnson not only did not refuse to pay according to the contract, but that he offered, and appellee refused to accept, all that, under the contract, was due; that is, for so much of the work appellee claimed to have done as was conceded by Johnson.

It was, therefore, a question for the jury to decide, who breached the contract; and upon their decision of this question depended appellee's right to recover upon each of the three items for which he sued, as well as appellant's right to recover upon her counter-claim.

1. The evidence having shown that appellee had performed services under the contract, which had been accepted by Johnson and for which no payment had been made, appellant was not entitled to a peremptory instruction.

2. Instruction No. 1, given by the court, over the objection of the defendant, authorized the jury to find for the plaintiff, under the contract, for such logs as had been delivered, at the contract price, without regard to whether the breach of the contract was made by the plaintiff or the defendant. This was error, since plaintiff's right to recover, upon the contract, was dependent upon a breach by the defendant, whereas, as we have pointed out, if the breach was plaintiff's he was not entitled to recover on the contract, but upon a *quantum meruit.*

By the second instruction, the jury were authorized to find for the plaintiff for lost profits, if he was prevented from carrying out the contract by reason of the failure of Johnson to pay according to the contract, for such logs as the jury believed from the evidence Johnson was obligated to put into the creek, and which he did not put therein. This instruction was erroneous, in that it authorized a finding for plaintiff for logs that were never put in the creek, upon the theory that, by the contract, Johnson was obligated to place in the creek a definite number of logs, which, as we have heretofore pointed out, the contract did not authorize; and the instruction should have informed the jury what payments, under the contract, appellee was entitled to demand, as herein indicated.

3. By instruction No. 3, to the giving of which appellant objected and excepted, the jury were instructed to find for the plaintiff, damages for the use of the

splash dam by Johnson, after plaintiff abandoned the contract, in drifting out logs not covered by the contract. There was no evidence whatever that Johnson used the dam to drift out any logs, other than those specified in the contract, or in any way, except as the contract authorized, and, therefore, this instruction should not have been given. And since the jury found for the plaintiff in the sum of one thousand dollars, it is apparent that they found for him under each of these instructions, since the amount awarded is more than the sum of any two of these items; and, as there was no evidence of damage by reason of the use of the splash dam, the verdict is contrary to and not supported by the evidence, for which reasons the judgment must be reversed.

4.    We do not deem it necessary to consider in detail the competency of those portions of appellee's testimony, admitted over the objections of appellant, and to which objections are urged here, or to do more than call attention to the fact that subsection 2 of section 606 of the Civil Code forbids a person from testifying for himself, not only concerning any verbal statements of a person who is dead when the testimony is given, but also concerning a transaction with, or act done or omitted to be done, by such decedent. While appellee was not permitted to testify concerning conversations with decedent, Johnson, he was permitted, over appellant's objection, to testify concerning acts done and omitted by the decedent; and upon another trial such evidence should be excluded.

For the reasons indicated, the judgment is reversed, and the cause remanded for another trial consistent herewith.