## UNITED MERCANTILE AGENCIES v. SILVER FLEET MOTOR EXPRESS, Inc.

### No. 162.

District Court, W. D. Kentucky,
Louisville Division.

June 30, 1943.

See, also, 1 F.R.D. 709.

John Marshall, Jr., Gavin H. Cochran, and Peter, Heyburn & Marshall, all of Louisville, Ky., for plaintiff.

Robert P. Hobson and Woodward, Dawson & Hobson, all of Louisville, Ky., for defendant.

MILLER, District Judge.

The plaintiff, United Mercantile Agencies, sues to recover compensation for services rendered to the defendant, Silver Fleet Motor Express, Inc., under a contract as hereinafter set out. The defendant claims that the payments made by it and accepted by the plaintiff fulfill any obligations which it had under the contract sued on.

The contract referred to was in the following written form:

"November 26, 1937
"Silver Fleet Motor Express, Inc.,
"Louisville, Kentucky.
"Gentlemen:
"We offer you our services in effecting economies and/or increasing profits in the operation of your business upon the follow-

ing basis: We will make recommendations to be acted upon and continuously work to the end that they will become and remain effective.

"All recommendations are to be submitted to E. J. Buhner for acceptance or rejection. However, at the request of either party hereto recommendations will be submitted to a committee and the decision of a majority of the committee shall be absolute and binding on both parties as to the acceptance or rejection of any recommendation which may be made.

"Said committee will consist of E. J. Buhner, M. R. Buhner, C. J. Buhner, O. L. Doud and E. W. Krause. Should a vacancy be caused in the above committee through death, resignation or otherwise, a successor is to be chosen by the remaining members of the committee.

"The economies or increased profits effected are to be confirmed by letter to us. These letters will be the basis for our compensation. However, any recommendations made by us and adopted by you are to be paid for as herein set forth.

"We are to be paid each week one-third of the agreed savings and/or increased profit resulting from our approved recommendations. All recommendations approved during the life of this agreement are to carry the same rate of compensation for fifteen months.

"You are to give our representatives every assistance and information that may be necessary for their work.

"You agree not to employ during the life of this agreement anyone whom we may assign to your work without first having obtained our written approval.

"This agreement is made for the period of fifteen months from November 26, 1937.

"Yours very truly,
"United Management & Engineering
Company
A Division of
United Mercantile Agencies
"F. W. Drybrough
"F. W. Drybrough, President.
"Accepted:
"Silver Fleet Motor Express Inc.
"Ed J. Buhner Pres
"M. R. Buhner
"O. L. Doud
"E. W. Krause
"O. J. Buhner"

On or about January 17, 1938, H. R. Reynolds, an industrial engineer in the employ of the plaintiff, undertook a study and survey of the operations of the defendant at its terminal in Louisville, Kentucky. This continued until the last week in April. He then went to Chicago, Illinois, where he spent approximately two and one-half months making a study and survey of the defendant's operations at its terminal in that city.

His work in Louisville disclosed to him existing defects as follows: An overlapping in city pickup and delivery; an overlapping of man hours on the terminal dock; use of improper or insufficient type of equipment. In his effort to remedy these conditions he replotted the city into districts and arranged assignments which would eliminate the duplication of effort arising from two men working in the same district; the dispatcher was moved from the end of the dock to the center and the dock was divided into definite districts so that drivers for those districts would drop and take on freight at these particular points instead of parking at any point on the dock with the resulting necessity of moving the freight from its position on the dock to the position of the truck. A system of dual equipment was instituted which permitted the loading of an empty truck while the driver was out delivering another load; "head and tail delivery" meaning loading the truck in such a way that the last piece of freight in was the first piece out, was also put into effect; a bonus system was included based on reduction of hours of labor on the part of the dock crew; a yard man was used to spot trailers coming into the yard to be unloaded, which enabled the driver to take care of certain clerical details while the trailer was being parked at the proper point; a standardization of labor hours was effected whereby each man worked a number of hours and had certain duties to perform; equipment was reallocated so as to provide two pickup trucks for each district, and the purchase of necessary equipment under the reorganized system was recommended instead of a partial rental system previously in use. These recommendations were adopted and put into effect at the Louisville terminal. Following a conference during the last of May 1938, the plaintiff on May 23, 1938 wrote the defendant the following letter:

"We agreed Saturday that we were to be paid on savings actually concluded and of which there is at the moment only one,

namely, the labor savings at the Louisville terminal.

"We further agreed that you would average the labor cost per CWT for the twelve months of 1937 and we would accept that as the figure against which our savings were to be computed.

"I am wondering if you will be good enough to let us have the labor items for each month of last year and the tonnage. Also the figure that you make out of it as the one against which we are to work for fifteen months.

"We further agreed to start with the month of April, so it will be in order for you to send us check for one-third of the savings so established for that month. This means that our compensation for this job will run out with the June 1939 payment.

"Sincerely yours,
"(signed) F. W. Drybrough
"President."

Under date of May 27, 1938, the defendant replied as follows:

"May 27, 1938
"Mr. F. W. Drybrough, President,
"United Management & Engineering Company,
"United Building,
"Louisville, Ky.
"Dear Mr. Drybrough:

"In accordance with yours of May 23rd, we are enclosing herewith detail summary of costs and savings at the Louisville terminal, which results in a net savings of $470.65 for the month of April, 1938, compared to the average for the year 1937.

"We enclose herewith our check for $156.88. This being the one-third due you on such savings.

"If you desire to send a form to us for reporting these savings to you monthly, we will be glad to prepare the information. Otherwise, you may expect to hear from us by letter.

"Truly yours,
"Treasurer
"OLD:AR
"CC: Mr. E. J. Buhner
"Mr. M. R. Buhner
"Mr. C. J. Buhner
"Mr. L. Blackman
"Mr. E. W. Krause"

Thereafter each month through October, 1938, the defendant sent to the plaintiff a similar letter showing the comparative figures with resulting savings for the month, and enclosing its check for one-third of the savings so disclosed. The letter and check for the month of October was mailed on November 18, 1938. Each of the figures submitted contained an item of expense of from approximately two hundred and fifty to four hundred dollars per month known as local cartage. Local cartage was an allowance made to the customer for delivering to or picking up freight at the defendant's terminal by the use of the customer's own equipment instead of being picked up or delivered by the defendant's equipment, or payments by the defendant to someone employed by the customer to perform this service. The plaintiff protested several times against the inclusion of this item in the computation of operating expenses at the terminal and in the resulting computation of monthly savings, but the defendant insisted it was a proper item, never agreed to eliminate it and continued to include it in the monthly computations above referred to. The checks sent by the defendant in payment of the monthly savings were received and cashed by the plaintiff. Upon the unionization of the defendant's employees the defendant on November 1, 1938, granted a wage increase to all its employees who did work in connection with the dock at its Louisville terminal, said increases being in most instances from ten to twenty cents per hour. Thereafter, starting with the month of October, 1938, the defendant claimed that there were no further savings at the Louisville terminal. The facts bearing on this phase of the case have been stipulated by the parties and need not be repeated here. They show that the plaintiff's adopted recommendations increased the number of pounds handled per man-hour during the fifteen months contemplated by the contract over the average number of pounds handled per man-hour in 1937 from 1327 to 1774. Yet the cost per man-hour increased from $.36984 to $.47764. Defendant's claim is based upon the fact that the actual operating cost per man-hour after October 31, 1938, was actually higher than in 1937, even though the plaintiff's recommendations were in effect. The plaintiff claims that the increased cost to the defendant was due solely to the wage increase it granted to its employees, that there was an actual substantial increase in the number of pounds handled per man-hour over 1937, and that except for the increase in wages the savings to the defendant was $20,606.87.

■■ At the start of this action the defendant claimed that the plaintiff was not entitled to any compensation for recommendations adopted by the defendant but not confirmed by letter. This contention was disposed of adversely to the defendant by the Court's Memorandum Opinion of May 14, 1941, 1 F.R.D. 709, in which it was pointed out that the contract required the confirmation by letter of economies effected, but that mere approval and adoption of recommendations without written confirmation thereof was sufficient if economies actually resulted therefrom. Defendant now contends that the original contract of November 26, 1937, did not provide any formula for determining the economies effected by the adopted recommendations; that such a formula was subsequently agreed upon by the parties as set out in the plaintiff's letter of May 23, 1938; this formula was based upon the labor cost per CWT (hundred weight) and is the exclusive yardstick to be used in determining plaintiff's rights under the contract; and that since the labor cost per CWT actually increased after October 31, 1938, the plaintiff is entitled to no payments for the period after that date. The strict application of this formula would sustain the defendant's contention as the labor cost per CWT was actually more after November 1, 1938, than it was before that time. But it is apparent that the formula adopted by this supplemental agreement by the parties was based upon the assumption that labor costs would not be either increased or decreased by the defendant. The original contract provides that the plaintiff was to be paid "one-third of the agreed savings and/or increased profits resulting from our approved recommendations." The formula subsequently adopted for the purpose of determining what the savings or increased profits were must necessarily be considered in connection with the original contract. The adopted recommendations resulted in a savings to the defendant, even though savings were more than offset by other operating costs injected into the picture by the defendant. This cost would be still greater except for the adoption of the plaintiff's recommendations. Accordingly, the savings effected by the recommendations are still in the picture. It is these savings that the defendant agreed to pay for; that is the essence of the contract. The plaintiff has completely performed its side of the contract in this respect; the defendant has accepted that performance and has profited thereby. It would be a severe and harsh construction, entirely unwarranted by the real intention of the parties, to relieve the defendant of its obligations to pay for the benefits which it has received merely because the yardstick has become obsolete and is no longer suitable for measuring this benefit. This inability to use the formula agreed upon is the result of the act of the defendant. The situation is very similar to the well-recognized principle of contract law that where one of the contracting parties prevents the complete performance of a contract by the other party according to its terms, such complete performance as a condition precedent to recovery is waived by him and the other party is entitled to recover according to the benefit conferred. Hoefflin v. Wilkerson, 184 Ky. 484, 210 S.W. 667; Johnson, Adm'r, v. Tackitt, 173 Ky. 406, 410, 191 S.W. 117; Elizabethtown & P. R. Co. v. Pottinger & Bro., 10 Bush 185; Restatement, Subject Contracts, Section 295; See Bryant v. Jones, 255 Ky. 606, 613, 75 S.W. 2d 34. Accordingly, it is the view of the Court that the formula agreed upon by the parties for determining the savings is to be used only so long as the fundamental conditions in effect when it was adopted continue to exist, and when the defendant without the consent of the plaintiff changed those fundamental conditions so as to make the application of the formula no longer a fair test of the parties' rights under the contract, the Court will seek another formula which will correctly determine the compensation due the plaintiff. The increase over 1937 in the average number of pounds handled per man-hour appears to be the real savings which the plaintiff's recommendations produced, and accordingly one-third of the figure reached by translating this savings into dollars and cents should be the plaintiff's recovery on this phase of the case.

■■ The plaintiff contends that the item of local cartage included by the defendant in computing its costs at its Louisville terminal should be excluded, which would result in a corresponding increase in the savings and in the amount of the plaintiff's recovery. Strictly speaking this item of operating expense is not a part of the labor cost at the Louisville dock, but in view of the wide scope of the study and survey made by plaintiff's engineer, Mr. Reynolds,

and the general character and extent of his recommendations which were adopted and put into effect I believe that it was the real intention of the parties that the operating expenses at the Louisville dock was the real field under consideration rather than the restricted field of labor costs on the dock alone. Reynolds' survey and recommendations dealt with both pickup and delivery service and with the use of equipment pertaining thereto, thus making it apparent that he at least treated the matter of labor on the dock and expenses incident to receipt and delivery of freight as a single field of investigation. This appears to the Court to be both a logical and reasonable consideration of the problem. The cartage was just as much an item of expense in the receipt and delivery of freight as was the cost to the defendant of operating its own trucks for that purpose. In addition, with respect to the months prior to November 1938, the plaintiff's contention that it was not a proper item of consideration is in conflict with its acceptance and cashing of the checks which were tendered with that item included in the computation of their amounts. Actions usually speak louder than words, and unless the plaintiff was prepared to waive this contention it should not have accepted and cashed the checks. Alcorn v. Arthur, 230 Ky. 509, 20 S.W.2d 276. This contention of the plaintiff is accordingly rejected.

█ Plaintiff also claims compensation for the savings effected by the recommendations of Reynolds at the defendant's Chicago terminal. Reynolds recommended certain changes in the defendant's system of dispatching and routing trucks, similar changes on the dock to the ones which he had recommended at the Louisville terminal, and certain reductions in personnel. He also recommended a change in location of the defendant's terminal, but it appears that this idea had already been considered by the defendant and was ultimately carried out according to the defendant's own ideas and plans, rather than according to any recommendations made by Reynolds. Some but not all of Reynolds' recommendations for the Chicago terminal were put into effect by the defendant. The stipulation between the parties does not state the savings, if any, effected by these changes. The evidence on this point by both parties is meagre, very general in its nature and unsatisfactory. Reynolds' testimony was to the effect that prior to making the changes recommended by him an average of 2,165 man-hours of dock labor per week was required to handle the freight at defendant's Chicago terminal, whereas after the recommended changes had been put into effect this figure was reduced to 1,754 man-hours per week, resulting in a saving of 411 man-hours of labor per week. He further testified that the removal of Komstock, the Dock Manager at Chicago, as recommended by him saved his salary of $200 per month and that the combination of the duties of dock foreman and dispatcher, also recommended by him, eliminated a duplication in salary of $35 per week. No work sheets, data, or documentary evidence was offered by him in support of his general conclusions. The Treasurer of the defendant testified unequivocally that no savings were effected at the Chicago terminal. On the plaintiff's motion the Court ordered the defendant to make its books and records pertaining to the Chicago terminal available to inspection by the plaintiff, as had been previously done for the Louisville terminal. Neither the Chicago books nor any summary of them by a qualified accountant was offered in evidence by the plaintiff in support of Reynolds' contentions, although the Louisville books were used very effectively by the plaintiff. Defendant's testimony with respect to the dock manager Komstock satisfies the Court that his transfer from Chicago, and the elimination of his salary at that terminal, was not the result of Reynolds' recommendations and that the plaintiff is not entitled to that claimed item of savings. On the disputed point of what savings, if it by the pleadings.

Counsel for plaintiff will draft and tender formal Findings of Fact and Conclusions of Law in accordance with the stipulation and the views herein expressed, together with judgment for entry.