Ned HALL and Mary Hall, his Wife,
Appellants/Cross–Appellees

v.

Cornelius ROWE, Appellee/Cross–
Appellant.

Nos. 2011–CA–001946–MR, 2011–
CA–001995–MR, 2011–CA–
001996–MR.

Court of Appeals of Kentucky.

Aug. 8, 2014.

Billy R. Shelton, Lexington, KY, for Appellants/Cross–Appellees.

Jerry A. Patton, Prestonsburg, KY, for Appellee/Cross–Appellant.

Before CAPERTON, DIXON, and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Ned Hall and Mary Hall appeal from the Floyd Circuit Court's order denying their motion to alter, amend, or vacate the jury verdict and judgment entered against them for breach of a coal mining lease with Cornelius Rowe. Rowe likewise cross-appeals from the court's order denying his motion to alter, amend or vacate the verdict and judgment entered against him in the same case. For the following reasons, we reverse the judgment and remand this case to the trial court.

In September 2007, Ned and Mary Hall filed a complaint in the Floyd Circuit Court against Rowe and his company, Ro–Co Resources, Inc., alleging damages resulting from Rowe's breach of a July 3, 2006 lease agreement between the parties. The Halls alleged that Rowe breached certain terms of the lease by underpaying royalties and failing to provide required documentation. They requested monetary damages and a declaration that the lease was null and void. Rowe filed a counterclaim against the Halls, alleging that Ned Hall interfered with his mining operations and sought monetary damages for tortious interference with the business relationship, other related torts, and breach of the lease.

The case proceeded to trial in August 2011. Ned Hall testified that the parties entered into the lease for mining a coal seam, the "Elk Horn # 3 seam," located on property owned by the Halls. Hall

claimed that while the mining was ongoing, he did not receive documentation noting the price Rowe received for coal sold from the property, nor did he receive weigh tickets denoting the amount of coal mined from the seam. He further testified that he was only paid $1.00 per ton for coal sold from the property, despite the $3.00 per ton royalty required by the lease agreement.[1] Hall sent Rowe a default letter in July 2007, informing Rowe that he was in default of the lease due to failure to pay the correct lease royalty and failure to provide the documentation required by the lease, but Rowe never corrected the default. Mary Hall did not appear or participate in the trial.

Rowe testified that he had incurred damages due to his inability to mine approximately 41,000 tons of coal which he needed to supply a coal sales agreement with Koch Carbon. Rowe claimed that he asked Dekalb, the permittee on the surface mining permit, to amend the permit to include the area necessary to recover the 41,000 tons. Ned Hall, acting as vice-president of Dekalb, refused to amend the permit to include the additional acreage. Additionally, Rowe testified that Ned Hall removed Rowe's contract miner, Bubba Coal, from the mining permit, and blocked the access road to the mine. Rowe admitted that he only paid the Halls either $1.00 per ton or $2.25 per ton for the coal mined from the property, but claimed this was because the coal was dirty and contained impurities. He also acknowledged that he did not provide the Halls with the truck weight tickets as required by the lease.

Prior to the case being submitted to the jury, counsel for the parties discussed proposed jury instructions with the trial judge. Hall objected to the instructions on two grounds: first, he objected to the instruction regarding Rowe's damages due to insufficient proof; second, he claimed the instructions should include an instruction asking the jury to determine which party breached the lease first. Both of Hall's objections were overruled, and the case was submitted to the jury.

The jury ultimately found that both parties breached the lease, and returned a verdict in favor of the Halls in the amount of $59,150 for unpaid royalties, and for Rowe in the amount of $318,000 for Hall's interference with Rowe's mining operations. The trial court entered a judgment awarding Rowe $318,000 in consequential damages, together with costs and post-judgment interest at 12% per annum. The trial court entered judgment awarding the Halls $59,150 plus costs, 8% pre-judgment interest dating from February 29, 2008 until the date of the judgment, and 12% post-judgment interest. Each party then filed a motion to alter, amend or vacate the judgment. Both motions were denied, and this appeal and cross-appeal follow.

On appeal, the Halls make three arguments. First, they claim the jury should have been instructed to determine which party was first to breach the lease, arguing that once one party breaches a contract,

---

1. The lease states: "Lessee shall pay to the Lessor the sum of $3.00 per ton of clean coal mined and removed from the Elk Horn No. 3 seam except for compliance coal as defined below ... Royalty payments will be based on truck scale tickets tonnage. Copies of scale tickets and quality analysis shall be provided to Lessor at the end of the work day every Friday. The per ton royalty payments, as to the Elk Horn No. 3 seam only, are based on coal that tests greater than 14% ash, less than 12,000 BTU, and greater than 1% sulfur. If the coal can be mined and trucked out as compliance coal (less than 14% ash, greater than 12,500 BTU, and less than 1% sulfur) the royalty shall be $3.00 or 8% per ton of the selling price in the pit based upon truck scale tickets tonnage. The 8% Royalty rate shall apply only when the selling price is $54.00 per ton or greater."

the second party's obligation to perform is extinguished. Second, the Halls maintain that the damages awarded to Rowe were unsupported by the evidence since Hall cannot be personally liable for his actions undertaken as an agent of his employer, Dekalb. Third, the Halls argue that the judgment against Mary Hall was improper because Rowe presented no evidence that she interfered with Rowe's mining business.

In Rowe's cross-appeal, he makes two arguments. He first argues that the Halls presented insufficient evidence to support the damages they were awarded. Then, he claims the Halls are not entitled to prejudgment interest because they did not include a demand for it in their complaint.

■ In general, a trial court has unlimited power to alter, amend, or vacate its judgments pursuant to CR[2] 59.05. *Bowling v. Kentucky Dep't. of Corr.,* 301 S.W.3d 478, 483 (Ky.2009). The Supreme Court of Kentucky has limited the grounds for relief under CR 59.05 to those established by its federal counterpart, Federal Rule of Civil Procedure 59(e). *Id.*

There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Id.* (internal footnote omitted). A trial court's ruling on a CR 59.05 motion to alter, amend or vacate is reviewed under an abuse of discretion standard. *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Woodard v. Commonwealth,* 147 S.W.3d 63, 67 (Ky.2004) (quotations and citation omitted).

■ The Halls first argue the jury should have been instructed to determine which party breached the lease first. The Halls assert that if Rowe was first to breach the lease, then their duty to perform under the lease was extinguished and they cannot be held liable for a subsequent breach of the lease.

Regarding jury instructions, this court has held the following:

Appellate review of jury instructions is a matter of law and, thus, *de novo.* "Instructions must be based upon the evidence and they must properly and intelligibly state the law." An instruction's function is " 'only to state what the jury must believe from the evidence ... in order to return a verdict in favor of the party who bears the burden of proof[.]' "

*Reece v. Dixie Warehouse & Cartage Co.,* 188 S.W.3d 440, 449 (Ky.App.2006) (citations omitted).

■ We agree with the Halls' argument that the trial court erred in failing to instruct the jury as to whether Rowe breached the lease first. Kentucky case law adheres to the "fundamental principle in the law of contracts that before one may obtain the benefits the contract confers upon him, he himself must perform the obligation which is imposed upon him." *W. Kentucky Coal Co. v. Nourse,* 320 S.W.2d 311, 314 (Ky.1959); *see Dalton v. Mullins,* 293 S.W.2d 470, 476 (Ky.1956)

2. Kentucky Rules of Civil Procedure.

(holding that "the party first guilty of a breach of contract cannot complain if the other party thereafter refused to perform[ ]"); *O'Bryan v. Mengel Co.*, 224 Ky. 284, 288, 6 S.W.2d 249, 251 (1928) (stating "[n]o principle in the law of contracts is better settled than that the breach of an entire and indivisible contract in a material particular excuses further performance by the other party and precludes an action for damages on the unexecuted part of the contract[ ]"). In *Dalton*, the court noted that upon one party's refusal to perform the written contract, the other "had the right to treat this action as a breach, to abandon the contract, and to depart from further performance on his own part *and finally demand damages.*" 293 S.W.2d at 476 (emphasis added); *see also O'Bryan*, 224 Ky. at 288, 6 S.W.2d at 251 (stating "[i]n such cases the injured party may consider the contract as ended, himself exonerated from its obligations, and entitled to invoke his remedy for damages[ ]").[3]

As to the trial court's failure to give jury instructions on first breach, in *Blue Diamond Coal Co. v. Robertson*, 235 Ky. 425, 427, 31 S.W.2d 701, 702–03 (1930), the court stated

> There was an issue sharply made by the pleadings and evidence as to which party had first breached the contract. Plaintiff's right to recover upon the contract was dependent upon a breach by the defendant while he was performing it. If he had failed to substantially comply with the provisions of his agreement, when the company was not in default, the breach was the plaintiff's, and the defendant was justified in treating it as a discharge. Page on Contracts, § 1434; *Johnson v. Tackitt*, 173 Ky. 406, 191

S.W. 117. The court therefore erred in holding as a matter of law that the defendant had abandoned the contract. When a contract is not performed, the party who is guilty of the first breach is generally the one upon whom rests all the liability for the nonperformance. That issue should have been submitted to the jury by an appropriate instruction.

In the instant case, the record clearly reveals a dispute among the parties as to whether Rowe first breached the lease so as to entitle the Halls to terminate the lease. This was a factual determination to be made by the jury, and the trial court's failure to give an instruction necessitates reversal and a new trial.

■ While we express no opinion as to the outcome of the foregoing determination to be made by the jury on remand, we will address the Halls's two remaining arguments since those issues may arise on remand. The Halls argue that the damages awarded to Rowe are unsupported by evidence. The Halls cite *Am. Collectors Exch., Inc. v. Kentucky State Democratic Cent. Executive Comm.*, 566 S.W.2d 759, 761 (Ky.App.1978), for the rule that "the law generally protects an agent from liability for lawful acts done within the scope of his agency on behalf of a disclosed principal." They claim that since Ned Hall was acting as an agent of Dekalb when he refused to expand the area covered by the mining permit, he is not the real party in interest. Rowe argues that Ned Hall's actions in refusing to expand the area covered by the mining permit, blocking his access to the property, and removing his contract miner from the permit were not performed for the benefit of Dekalb, but rather because of Hall's personal displea-

---

**3.** These latter quotations from *Dalton* and *O'Bryan* dispose of Rowe's argument that the principle of first breach only applies when a party is seeking specific performance, or other equitable remedy, as opposed to monetary damages as in this case.

sure with Rowe. We believe the jury had adequate evidence to conclude that Hall personally interfered with Rowe's mining operations, including evidence of the temporary injunction prohibiting Hall from interfering any further. Hall entered into the lease in his individual capacity, and is an individual party to the case, whereas Dekalb is not. We do not believe the trial court abused its discretion by refusing to amend the judgment on these grounds.

▮ Lastly, the Halls argue that the judgment against Mary Hall was not supported by the evidence. The Halls claim Rowe presented no evidence that Mary Hall interfered with his mining business, and therefore, the judgment entered against her was improper. In response, Rowe asserts that because Mary Hall filed the initial complaint, was named in the counter-claim, and then failed to participate in the proceedings, she waived all defenses and a judgment against her was proper as a co-lessor. Rowe also points out that the Halls never tendered a jury instruction attempting to exclude Mary Hall from liability. The Halls point to no evidence in the record of any defense raised by or on behalf of Mary Hall, and upon independent review, we find none. Without a valid defense, Mary Hall, as a named defendant in Rowe's counter-claim, is jointly and severally liable for breach of the lease as a co-lessor.

▮ In his cross-appeal, Rowe first asserts that the evidence is insufficient to support the damages awarded to the Halls. He claims that because the coal that was mined contained impurities, his reduced royalty payments were appropriate. We disagree. While the lease establishes a minimum royalty payment of $3.00 per ton of "clean coal mined," with the implication that coal must meet some threshold, sufficient evidence exists that would permit a reasonable jury to find Rowe in breach of the lease. Rowe failed to provide truck scale tickets, which the lease clearly provides as the basis for royalty payments. Additionally, Rowe's decision to reduce the royalty payments was unilateral and Rowe points to no language in the lease that would support such an adjustment. Therefore, the trial court properly refused to amend its judgment on this basis.

▮ Lastly, Rowe argues in his cross-appeal that because the Halls did not make a demand for pre-judgment interest in their complaint, they are not entitled to it. We disagree. "The longstanding rule in this state is that prejudgment interest is awarded as a matter of right on a liquidated demand[.]" *3D Enters. Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky.2005). "Liquidated claims are 'of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values.' " *Id.* Because the Halls's claim requested damages easily computed by the rate agreed upon in the lease and the amount of coal mined from the property, pre-judgment interest was a matter of right, and they did not need to make a demand for it in their complaint. Nonetheless, we note that the catch-all clause at the end of the complaint, "Any other relief deemed appropriate," would encompass pre-judgment interest.

The judgment of the Floyd Circuit Court is reversed and remanded to the trial court for a new trial.

ALL CONCUR.