RENDERED: JUNE 4, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0361-MR

KEITH HERRON                                           APPELLANT


                 APPEAL FROM CAMPBELL CIRCUIT COURT
v.                 HONORABLE DANIEL J. ZALLA, JUDGE
                     ACTION NO. 19-CI-00072


CATHERINE L. SPECHT                             APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND KRAMER, JUDGES.

CALDWELL, JUDGE: Keith Herron appeals the judgment of the Campbell Circuit Court denying his claim for an equitable interest in real property owned by his former girlfriend, Catherine Specht. We affirm the trial court.

## FACTS

Keith Herron (Herron) and Catherine Specht (Specht) were in a relationship for some years and moved in together in 2009. In 2013, Specht

purchased a home in her name solely and the couple continued to reside together in that home. The parties split household expenses; every month Herron would deposit into Specht's bank account an amount equal to the mortgage payment, which represented about one-half the total monthly household expenses. From that account, Specht would pay the household bills, including the mortgage which was solely in her name, and the utilities and other expenses of a home.

In the summer of 2018, Herron and Specht ended their romantic relationship but remained roommates, still residing in the home. The parties executed a handwritten contract wherein they agreed that Herron would continue living at the home and would repair certain conditions in the home in anticipation of Specht listing the home for sale. Once sold, Specht agreed all net proceeds of the sale would be split equally between the two parties.

The plan to continue to live together following the end of their relationship was unsuccessful and, a short time later, Specht served Herron with notice to quit the residence. In January of 2019, Specht obtained an Emergency Protective Order (EPO) against Herron following an altercation which became physical. As part of the EPO, Herron was ordered to remain away from the residence.

Soon after the issuance of the EPO and his expulsion from the home, Herron filed suit seeking enforcement of the contract the two had executed. After

a bench trial, the trial court entered a judgment in favor of Specht finding that

Herron had failed to perform per the contract in that he did not fix the conditions

enumerated in the contract so that the home could be listed for sale. Such failure

excused Specht's duty under the contract to list the property and split any net

proceeds with Herron. Herron appealed, and we affirm the trial court.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is "clearly

erroneous" when acting as a trier of fact and the court's conclusions of law are

reviewed *de novo*.

> Because this is an appeal from a bench trial without a
> jury, the trial court's findings of fact are "not [to] be set
> aside unless clearly erroneous with due regard being
> given to the opportunity of the trial judge to consider the
> credibility of the witnesses." *Lawson v. Loid*, 896
> S.W.2d 1, 3 (Ky. 1995) (citing CR[1] 52.01). Factual
> findings are not considered clearly erroneous if they are
> "supported by substantial evidence." *Gosney v. Glenn*,
> 163 S.W.3d 894, 898 (Ky. App. 2005) (citations
> omitted). Appellate review of legal determinations and
> conclusions from a bench trial is de novo. *Id*. (citations
> omitted).

*Goshorn v. Wilson*, 372 S.W.3d 436, 439 (Ky. App. 2012).

> Our review of a circuit court's findings of fact following
> a bench trial is to determine whether those findings are
> clearly erroneous. CR 52.01. This rule applies with
> equal force to matters involving boundary disputes.
> *Croley v. Alsip*, 602 S.W.2d 418, 419 (Ky. 1980).

---

[1] Kentucky Rules of Civil Procedure.

> Factual findings are clearly erroneous if unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is defined as "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citations omitted).

*Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020).

## ANALYSIS

The trial court found that the parties had entered into a valid, enforceable contract. *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012) ("The requirements generally associated with contracts are 'offer and acceptance, full and complete terms, and consideration.'"). Under the terms of the contract executed after they had ended their relationship and dated September 8, 2018, both parties were obligated to perform certain duties. The court found that under the terms of the agreement Herron was to pay the electric and water bills and tender to Specht an amount equal to the monthly mortgage payment, as well as perform repairs to a front wall and the bathroom, clean out the garage, hook up radiant heating, and replace the cover on the electric meter box. Once those repairs were completed, Specht agreed to list the home for sale and agreed to split the proceeds after paying off the mortgage with Herron, as long as the parties agreed on the sale price.

The court found that Herron failed to perform under the contract when he stopped paying the electric and water bills, stopped remitting to Specht the amount of the monthly mortgage payment and did not complete the repairs enumerated in the contract. While the court acknowledged that the entry of the EPO and his resultant ouster from the residence made his compliance with the contract terms related to the repairs challenging, he sought no relief from the terms of the EPO which would have perhaps allowed for his performance of his contractual duties.

When a party to a contract abandons the agreement, the other party is released from any duty to perform.

> In *Dalton* [*v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956)], the court noted that when one party refused to perform under a written contract, the other party "had the right to treat this action as a breach, to abandon the contract, and to depart from further performance on his own part and finally demand damages." That is exactly the procedure TMG employed. Each party to a contract is entitled to the benefit of his bargain. Mostert's breach excused TMG's obligation to further perform under the Contribution Agreement, and therefore, Mostert was not entitled to summary judgment granting him judgment for the last scheduled installment payment on the Note.

*Mostert v. Mostert Grp., LLC*, 606 S.W.3d 87, 94 (Ky. 2020).

Herron was in breach of the contract when he stopped paying the bills he was contractually obligated to pay and failed wholly to conduct any repairs, which he contracted to undertake. Therefore, Specht was free to abandon the

contract, including her agreement to place the home for sale and split the proceeds with Herron. Herron did not provide consideration and so is not due the benefits he bargained for under the contract.

> If he had failed to substantially comply with the provisions of his agreement, when the company was not in default, the breach was the plaintiff's, and the defendant was justified in treating it as a discharge. Page on Contracts, § 1434; *Johnson v. Tackitt*, 173 Ky. 406, 191 S.W. 117 [(1917)].

*Blue Diamond Coal Co. v. Robertson*, 235 Ky. 425, 31 S.W.2d 701, 703 (1930).

Had Herron completed *any* of the work, he may well have been entitled to compensation for the accretion in value of the property attributable to his efforts. However, the evidence provided to the trial court indicates Herron completed none of the items he agreed to perform per the contract. "Although the court reversed the judgment for the plaintiff, it recognized that under a different set of facts sufficient to show the contract had been abandoned, recovery in *quantum meruit* for all of the work performed would be appropriate." *L.K. Comstock & Co., Inc. v. Becon Const. Co.*, 932 F. Supp. 906, 932 (E.D. Ky. 1993).

Herron is under the misapprehension that he "owned" the home because he paid bills while cohabitating in the residence for years before the execution of the contract. However, Specht was the sole legal owner. Only her name appears on the deed and only her name appears on the mortgage. Doubtless there are reasons that Herron's name appears nowhere on any legal documents

related to the home, but such is fatal to any argument that he has an ownership interest in the property. Rather, he attempts to rely upon the legal doctrine of "equitable estoppel" to establish an equitable interest in the realty. One must establish an equitable interest by establishing the following elements:

> In *Sebastian-Voor Properties, LLC v. Lexington-Fayette Urban County Government*, 265 S.W.3d 190 (Ky. 2008), our Supreme Court set forth the following elements of equitable estoppel:

>> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

> *Id.* at 194-95 (quoting *Weiand v. Board of Trustees of Kentucky Retirement Systems*, 25 S.W.3d 88, 91 (Ky. 2000) (quoting *Electric and Water Plant Bd. of City of Frankfort v. Suburban Acres Dev., Inc.*, 513 S.W.2d 489, 491 (Ky. 1974))).

*Cinque v. Lexington Vill., LLC*, 609 S.W.3d 30, 38 (Ky. App. 2020).

Herron has made no attempt to establish the above; rather, seeking to avoid the requirements of Kentucky caselaw by resorting to citing Florida caselaw. Apparently, Florida has less-stringent requirements for establishment of equitable interests. However, the realty concerned here is located in the Commonwealth, not the State of Florida, so the law of Florida is wholly inapplicable. *See New Domain Oil & Gas Co. v. McKinney*, 188 Ky. 183, 221 S.W. 245, 248 (1920) ("In that case all of the authorities, so far as we are aware (and no case to the contrary has been cited), hold that all matters concerning the title to and disposition of real estate are to be governed by the *lex loci rei sitae*[.]"). We hold that Herron has wholly failed to establish an equitable interest in the realty.

## **CONCLUSION**

We agree with the Campbell Circuit Court that Herron abandoned the contract when he wholly failed to perform as required in the bargained-for contract terms. Herron has also failed to forward a cognizable claim for any equitable interest in the property. For the foregoing reasons, we affirm the Campbell Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:   BRIEF FOR APPELLEE:

Mark Harris Woloshin   Robert E. Bathalter
Newport, Kentucky    Alexandria, Kentucky