**FS INVESTMENTS, INC., Plaintiff,**

v.

**ASSET GUARANTY INSURANCE CO.
and Van American Companies,
Inc., Defendants.**

**No. Civ.A. 01–20–KSF.**

United States District Court,
E.D. Kentucky,
Lexington.

March 12, 2002.

Kevin M. McGuire, Jackson & Kelly, Lexington, KY, for Plaintiff.

Gregory P. Parsons, Ryan S. Quinn, Stites & Harbison, Lexington, KY, for Defendants.

## OPINION & ORDER

FORESTER, Chief Judge.

Presently before the Court are various motions of the plaintiff and defendants. Having been full briefed, these matters are ripe for review and will each be addressed accordingly.

1. AGI is the majority stockholder of VAC.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This diversity action arises from an extended series of negotiations between the plaintiff, FS Investments, Inc. ("FSI") and the defendants, Asset Guaranty Insurance Company ("AGI") and Van–American Companies, Inc. ("VAC")[1], an agreed letter of intent between the parties, and the actions taken thereon. In early 2000, VAC decided to phase out its surety business by selling it to a third party or by engaging in a runoff plan. In January of 2000, FSI expressed an interest in purchasing certain VAC subsidiaries, specifically Van American Insurance Company, Inc. ("VAIC") and Van American Insurance Agency, Inc. ("VAIA"). In February of 2000, the parties entered into a Confidentiality Agreement, permitting FSI to review certain business information concerning VAIC and VAIA as well as certain of AGI's reinsurance portfolios related to that business. Shortly thereafter, FSI representatives and agents met with VAC and AGI representatives and agents in Lexington, Kentucky and began reviewing the books and records of VAIC and VAIA.

After this meeting, FSI determined that it was interested in pursuing negotiations regarding a potential acquisition of VAIC and VAIA through a stock purchase. To that end, FSI forwarded the first of many letters of intent to an AGI representative. AGI rejected this initial proposal, but the parties continued to negotiate. Throughout the spring, the parties exchanged term sheets and FSI tendered numerous acquisition proposals. Each new proposal was more detailed than the former proposal.

On June 2, 2000, these negotiations culminated in FSI's final proposal setting forth the principal terms and conditions upon which FSI was prepared to enter into an agreement (the "Purchase Agree-

ment") with VAC pursuant to which FSI would acquire certain of the business assets of VAIC and VAIA by acquiring all capital stock of those subsidiaries. Many of the terms and requirements of the purchase agreement *and* TPA agreements were outlined in great detail while other terms were left open for completion to the satisfaction of the parties thereto.

In addition to the purchase agreement and TPA agreement terms contained in the letter, FSI also expressed its intention to move forward with the agreement expeditiously. Specifically, FSI stated that it was interested in entering into a definitive Purchase Agreement and TPA Agreement II (collectively the "transaction documents") with VAC and AGI as soon as practicable, and in any event within sixty (60) days after VAC and AGI accepted of the terms of this letter. FSI also outlined temporal stages at which the parties would be able to exercise limited termination rights *after* accepting the terms of the letter. VAC or AGI could terminate the letter within thirty (30) days of acceptance if FSI had not obtained a written commitment for the guaranty, security agreement or pledge of collateral as described in the letter or if VAC or AGI decided not to proceed based upon its due diligence or the inadequacy of collateral. In addition, VAC or AGI could terminate the letter if FSI's board of directors had not approved the terms and conditions therein by June 15, 2000. FSI could terminate the letter within thirty (30) days of acceptance by VAC and AGI if the board of directors of VAC or AGI had not approved the terms and conditions of the acquisition as re-

flected in the letter. Finally, and in unconditional terms, FSI stated that, "[o]nce executed, the provisions of this letter shall expire upon the earlier of (a) the execution and delivery of a definitive Purchase Agreement by the parties hereto and (b) ninety (90) days after [VAC's and AGI's] acceptance of the terms of this letter, unless the parties shall otherwise agree." Thomas Aff., *Letter of Intent,* Exhibit 1 at 12, 15..

On June 2, 2000, FSI, VAC and AGI signed the agreed letter of intent. The parties immediately began due diligence, worked toward satisfaction of the express terms in the letter and began negotiating the open terms in the letter. On June 26, 2000, AGI and VAC requested a thirty (30) day extension of the right to terminate the letter of intent based upon its due diligence or with respect to the collateral to be provided in support of FSI's payment obligations. Jacobs Aff., Exhibit 15. AGI and VAC also requested a thirty (30) day extension of "the date by which the letter of intent shall have been approved by the board of directors of VAC and AGI after which date FSI may terminate the letter of intent. Absent such an agreement of extension of these provisions in paragraph 7 of the letter of intent, AGI and VAC may need to terminate the letter of intent in accordance with the provisions of paragraph 7(i)(C)." *Id.* Noting the importance of the deadlines, FSI reluctantly extended the period for satisfaction of the conditions[2] with the understanding that VAC and AGI would promptly complete whatever diligence was necessary. *Id.* at Exhibit 16.[3]

---

**2.** In addition to the letter from FSI's counsel "reluctantly" extending the deadlines in paragraph 7 of the letter of intent by thirty (30) days, the parties also contemporaneously acknowledged and agreed to extend the 60–day target date described in paragraph 6 by fifteen (15) days and the ultimate 90–day *expiration date* found in clause (b) of paragraph 15 by thirty (30) days. *Defendants' Reply,* Exhibit 1, D.E. # 18.

**3.** In a subsequent letter dated June 29, 2000, VAC identified the inadequacies of the underlying collateral and explained that the primary purpose of its request for extension of time was to allow FSI additional time to

The parties discussed the collateral and exchanged correspondence throughout the next month in an effort to determine whether to proceed with the acquisition or terminate the letter of intent under the provisions in paragraph 7. In mid July, AGI and VAC asked FSI to identify the chief executive officer slated to run the business upon acquisition and expressed a need to review FSI's detailed business plan to quell apprehensions about the collateral. *Id.* at Exhibit 19. Citing confidentiality concerns, FSI refused to introduce the CEO candidates, but agreed to provide a detailed business plan. *Id.* at Exhibit 20. However, the thirty (30) day extension for due diligence and termination of the letter was about to expire. Once again, the parties agreed to extend the termination deadlines as well as the target and expiration dates as expressed in the agreed letter of intent. FSI proposed the following changes:

FSI agrees to the following modifications of the Letter of Intent:

1. The 60 days following the date of the Letter of Intent within which Transaction Documents are targeted to be completed in paragraph 6 of the Letter of intent shall be extended to 87 days, meaning the close of business, August 28, 2000.

2. Each of the periods referred to in clauses (i)(A), (i)(B) and (i)(C) as well as clause (ii) of paragraph 7 of the Letter of Intent shall be extended to 70 days following acceptance of the Letter of Intent, meaning the close of business Friday, August 11, 2000.

3. The expiration date referred to in clause (b) of paragraph 15 of the Letter of Intent shall remain as previously last agreed under our letter of June 28, 2000, i.e., the

provide collateral acceptable to AGI and VAC.

close of business, Monday, October 2, 2000.

If the foregoing accurately describes our understanding with respect to modifications of the dates referred to in the Letter of Intent, please so indicate by signing and returning a copy of this letter.

*Id.* at Exhibit 21. VAC and AGI signed and returned the letter, extending the deadlines as outlined therein.

FSI subsequently forwarded its business plan to AGI and VAC. The defendants carefully reviewed the plan, and on August 4, 2000, informed FSI that at this juncture, "the business plan appears to remove most of the concerns of VAC and AGI regarding the collateral." *Id.* at Exhibit 25. "While VAC and AGI are not waiving any rights under the June 2, 2000 Letter of Intent, as amended, ... VAC and AGI believe it would be appropriate for ... FSI to 're'-initiate and move forward as quickly as possible with any and all necessary approvals with the Kentucky Department of Insurance ('KDOI')." *Id.* AGI also stated that it cannot seek its own approval "from the New York Department of Insurance until the KDOI has signed off on the transaction and restructuring, and as you know, both of those steps are necessary pre-cursors to proceeding to close the contemplated transaction." *Id.*

As soon as FSI learned that the collateral issues were for the most part resolved, it continued efforts to achieve KDOI approval. To that end, FSI requested initial drafts of the transaction documents (including the stock purchase and TPA agreements) which were to be prepared by VAC and AGI. *Id.* at Exhibit 27. FSI hoped to include those draft transaction documents in its KDOI approval application. *Id.* On August 11,

*Id.* at Exhibit 17.

2000, VAC suggested that the draft transaction documents were not required for KDOI approval and it would be imprudent to invest time and money in those documents prior to application for approval. *Id.* at Exhibit 28. Instead, VAC believed that the detailed letter of intent coupled with supplementary information would be sufficient for the KDOI approval application. *Id.* Subsequently, AGI and VAC reviewed FSI's draft application. Jacobs Aff., ¶ 22.

On August 22, 2000, representatives of FSI, AGI and VAC met with members of the KDOI to discuss the filing and approval process. *Id.* at ¶ 23. At the meeting, VAC confirmed with the KDOI that the letter of intent could be attached to the application in lieu of transaction document drafts. *Id.* With this information in hand, FSI filed the final approval application on August 25, 2000. *Id.*

On September 14, 2000, Frank Dempsey, counsel for the KDOI, informed FSI that the public hearing was tentatively scheduled for October 25, 2000. *Id.* Recognizing that the letter of intent would expire on October 2, 2000 if the parties had not yet executed a definitive purchase agreement by that date, and in an abundance of caution, FSI requested a thirty (30) day extension of the expiration date until November 2, 2000. Jacobs Aff., Exhibit 29. This extension would allow for the public hearing before expiration of the letter of intent and permit AGI and VAC to prepare the closing documents. Jacobs Aff., ¶ 23.

On September 20, 2000, Dempsey informed FSI that he had some concerns about the proposed acquisition. *Id.* at ¶ 24. Specifically, the KDOI was concerned about FSI's financial ability and apparent lack of insurance experience. Dempsey Aff., ¶ 5. The KDOI scheduled a meeting with FSI, AGI and VAC representatives on September 27, 2000 to discuss the Department's concerns. Jacobs Aff., ¶ 24. After a thorough discussion, FSI agreed to amend its approval application to address the concerns raised by the KDOI. *Id.* at ¶ 24, Exhibits 30 & 31.

Two days after the meeting, Dempsey contacted FSI and reiterated the Department's concerns about the proposed acquisition:

> As we discussed, since the purpose of this proceeding is to determine that the insurer will be prudently and competently managed, it will be necessary to disclose the identity of the proposed CEO. Also, due to the nature of the surety bond market at this time, please provide a description of any additional sources of capital available should Van American experience losses after your proposed takeover.

*Id.* at Exhibit 32. In addition, Dempsey stated that, "[o]nce we receive this additional information, we will advise you of our recommendation regarding approval of the transaction." *Id.*[4]

On September 29, 2000, counsel for AGI and VAC faxed and mailed the following correspondence to FSI:

---

4. Indeed, Dempsey's concerns about the proposed acquisition may have been more significant than FSI realized at the time. "Based on the materials and information that had been submitted to the [KDOI, Dempsey] determined as of the end of September 2000 that as counsel for the Department, [he] would oppose the proposed [acquisition] . . ., which opposition would have made approval

of [the] proposed acquisition unlikely." Dempsey Aff., ¶ 6. In his six years as counsel for the KDOI, Dempsey had never opposed such a transaction. *Id.* at ¶ 7. In the latter part of September 2000, Dempsey explained these strong reservations to VAC and informed the company that he would oppose the proposed acquisition. *Id.* at ¶ 8; *see also,* Thomas Aff., ¶ 7.

I am in receipt of your letter of September 14, 2000 and your e-mail of September 22, 2000 inquiring regarding the possible extension of the June 2, 2000 letter of intent, as amended (the "Letter of Intent"), past its present expiration date of October 2, 2000.

This is to advise, on behalf of each of Asset Guaranty Insurance Company and Van–American Companies, Inc., that they elect not to extend the expiration date of the Letter of Intent.

Jacobs Aff., Exhibit 33. On several occasions thereafter, FSI unsuccessfully attempted to persuade AGI and VAC to reconsider this position. In December of 2000, VAC obtained approval from the KDOI to phase out its surety and bond business by engaging in a voluntary run-off plan. Thomas Aff., ¶ 9. On January 10, 2001, FSI filed this lawsuit against AGI and VAC alleging breach of contract, breach of implied covenant of good faith, and in the alternative, promissory estoppel.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants now move the Court for summary judgment asserting, *inter alia,* that the letter of intent is not an enforceable contract. [D.E. # 14] Even if the Court determines that the letter of intent is an enforceable contract, defendants argue, the contract expired on October 2, 2000 and the defendants were not required to extend that deadline. [D.E.## 14, 18, 25]. Plaintiff initially moved the Court to strike the alternative argument that plaintiff "ran out of time" because plaintiff believed that the argument was raised only in the defendants' reply. [D.E. # 19] The Court subsequently granted a joint motion to brief the issue [D.E. # 22] and will now deny plaintiff's motion to strike as moot.

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

## B. Contract Interpretation and Construction

As noted above, defendants' principal argument in support of summary judgment is that the letter of intent is not an enforceable contract. While this contention is certainly persuasive,[5] the Court will assume for the purpose of this motion only, and viewing all facts in a light most favorable to the nonmoving party, that the letter of intent is a contract between FSI, AGI and VAC to "mutually endeavor, promptly and in good faith, to consummate the acquisition in accordance with the terms" therein. Jacobs Aff., Exhibit 1 at ¶ 15. Accordingly, the Court must now look to the provisions of the contract and determine whether the agreed letter of intent expired by its own terms on October 2, 2000.

"The construction as well as the meaning and legal effect of a written instrument, however compiled, is a matter of law for the court." *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992) (citing *Equitable Life Assur. Soc'y of the United States v. Wells*, 101 F.2d 608 (6th Cir.1939)). It is a well-settled rule of construction that when interpreting contracts, the definite and precise prevails over the indefinite. *International Union of Operating Engineers v. J.A. Jones Const. Co.*, 240 S.W.2d 49 (Ky. 1951). "If the contract is so clear and free from ambiguity as to be self-interpretative, no construction is necessary but it should stand as it is written and should be enforced according to its express terms...." *Veech v. Deposit Bank of Shelbyville*, 278 Ky. 542, 128 S.W.2d 907, 911 (1939); *see also Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 164 (Ky.App.1977) ("It is well settled in Kentucky that, in the absence of ambiguity, a contract will be enforced according to its terms."). Moreover, "the contract is to be construed according to its tenor and terms and not by the evidence of what was in the mind of one of the parties." *Blue Diamond Coal Co. v. Robertson*, 243 Ky. 584, 49 S.W.2d 335, 335 (1932); *see also Green v. McGrath*, 662 F.Supp. 337, 342 (E.D.Ky.1986) ("Therefore, the fact that one party may have intended a different result is insufficient to alter the plain and unambiguous terms of a written contract.").

When the language is ambiguous, however, it is appropriate for the Court "to resort to extrinsic evidence or familiar rules of construction [and interpretation] to determine the intent of the parties and the legal effect of an agreement." *L.K. Comstock & Co., Inc. v. Becon Const. Co.*, 932 F.Supp. 948, 964 (E.D.Ky.1994) *aff'd* 73 F.3d 362 (6th Cir.1995). In deciphering the intent of the parties to a contract, the situation of the parties, the purpose or object of the contract, the conditions under which the contract was made, and the circumstances surrounding the execution of the contract may be considered. *Id.* at 965. An interpretation that gives the terms of the contract a reasonable, lawful and effective meaning is preferred over

---

**5.** *Compare Cinelli v. Ward*, 997 S.W.2d 474 (Ky.Ct.App.1998) (an agreement to agree or negotiate is without legal import); *Luck v. Luck*, 711 S.W.2d 860 (Ky.Ct.App.1986); *Walker v. Keith*, 382 S.W.2d 198 (Ky.1964); *Johnson v. Lowery*, 270 S.W.2d 943 (Ky.1954); *National Bank of Kentucky v. Louisville Trust Co.*, 67 F.2d 97 (6th Cir.1933) *with Simpson v.* *JOC Coal, Inc.*, 677 S.W.2d 305 (Ky.1984) (if there is a definite method for the Court to ascertain material terms, the contract is enforceable); *Slade v. City of Lexington*, 141 Ky. 214, 132 S.W. 404 (1910) (if the parties subsequently agree on open, material terms, then the contract is enforceable).

that which leaves part of the contract unreasonable or of no effect. *Id.* at 967 (quoting Restatement (Second) of Contracts § 203(a)). Finally, great weight is given to "contemporaneous acts, conducts, or declarations of the parties which indicate a mutual intent and understanding." *Id.* at 965.

In response to defendants' assertions that the letter of intent expired, plaintiff raises four separate arguments. Plaintiff contends that the expiration date in paragraph 15 was neither material nor "of the essence." This argument directly attacks the contract term through which the letter of intent purportedly expired. Plaintiff also argues that regulatory approval was not required before the contract expired. Next, plaintiff asserts that the defendants are barred from arguing that the letter of intent expired because the defendants failed to produce the transaction documents. Finally, plaintiff contends that the defendants waived their right to allow the letter of intent to expire. The Court will address each argument in turn.

### 1. The Expiration Term Was Not Material and Time Was Not "of the Essence"

■ Plaintiff argues that the expiration date in paragraph 15 of the letter of intent, as amended, was not material to the contract given the transaction structure and the conduct of the parties. In addition, plaintiff states that time certainly was not "of the essence" in this contract because the letter of intent does not state that time was "of the essence" and the parties' intentions do not reflect that time was "of the essence." To the contrary, plaintiff argues, the intent and conduct of the parties suggest that the dates were not "of the essence." Finally, citing *National Surety Corp. v. Allen–Codell Co.*, 5 F.R.D. 3, 4 (E.D.Ky.1945), plaintiff contends that whether time is "of the essence" in a contract is a question of fact that courts may

not address at the summary judgment stage of litigation.

Last things first, plaintiff appears to have misconstrued the holding in *National Surety Corp.* The *National Surety Corp.* opinion cited *Browning v. Huff*, 204 Ky. 13, 263 S.W. 661 (1924), for the proposition that, in the absence of express language, whether time is "of the essence" is a question of fact "as to the intent of the parties to be determined by consideration of all the attendant facts and circumstances, the nature of the subject matter involved and the object to be attained." 5 F.R.D. at 4 (emphasis added). These are the same contract interpretation steps that the Court outlined above. In fact, the *Browning* court summarized numerous texts and case law from various jurisdictions, ultimately concluding that "the tendency of modern authority at law as well as in equity is to regard the question [of whether time of performance named in the contract is essential] as one of construction to be determined by the intent of the parties. . . ." 263 S.W. at 662–63. As the Court noted earlier, construction of a contract is a matter of law. *Morganfield Nat'l Bank*, 836 S.W.2d at 895.

The late Judge Reed, in his capacity as a Kentucky Court of Appeals Judge, subsequently clarified this "law versus fact" distinction. *See Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky.1974).

> The interpretation of an integrated agreement is directed to the meaning of the terms of the writings in the light of the circumstances. The question of interpretation in these circumstances is to be determined by the trier of fact if it depends on a choice among reasonable inferences to be drawn on the extrinsic evidence admissible apart from the application of the parol evidence rule. Otherwise, the question of interpretation is a question of law.

*Id.* In other words, contract interpretation is no different than any other issue before the Court on a motion for summary judgment; if there is no genuine issue as to any material fact, then the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).[6] Indeed, the court in *National Surety Corp.* recognized as much in the paragraphs following the text cited by plaintiff, but concluded that based on the facts in that case, "there were genuine controversies upon material issues." 5 F.R.D. at 5. The case at bar does not support the same conclusion.

■ "Parties may place such lawful stipulations in their contracts as they may see fit and mutually agree upon, and if *sui juris* they are bound by them...." *Niles v. Meade,* 189 Ky. 243, 224 S.W. 854, 856–57 (1920) (holding that a term rendering a contract null and void after a specific date was an essential element of the contract). In *Rogers Bros. Coal Co. v. Day,* 222 Ky. 443, 1 S.W.2d 540 (1927), Kentucky's high court interpreted a contract for the sale of land in which the parties agreed that if a survey of the land was to be conducted by the buyer, it must be conducted by a specific date. 1 S.W.2d at 541. If the survey was not conducted by that date, the buyer was to take and pay for the land at the stipulated acreage. *Id.* The court provided the following framework for determining whether time was "of the essence" of the contract:

> [Whether time is 'of the essence'] is viewed from the standpoint of the intention of the parties as gathered from the particular involved contract, and, unless

the intention to make time the essence of the contract is clearly expressed, or necessarily implied, it will not be so regarded. [Citation omitted] However, in the same text the learned compilers state the universal rule to be that:

> Where the parties have expressly stipulated that time is to be regarded as of the essence of the contract, there is no room for doubt. That is a contract which the parties are competent to make, and when they do make it, it is binding upon courts in equity, unless expressly made so by the contract itself. It may be said, however, that time is an essential part of a contract, when it appears from the contract that the parties so intended.... Any words that show the intention of the parties to be that time shall be of the essence of the contract, or any clause which provides in unequivocal terms that if the fulfillment is not within a specified time the contract is to be void, will have that effect....

There seems to be no contrary statement of the correct principle by any court or text-writer, and we in an unbroken line of opinions have upheld and applied it under facts calling therefor. *Id.* at 541–42; *see also, Davis v. Lacy,* 121 F.Supp. 246, 251 (E.D.Ky.1954); *Distillery Rectifying & Wine Workers International Union of America v. Brown–Forman Distillers Corp.,* 308 Ky. 380, 213 S.W.2d 610, 612–13 (1948). With this doctrine in hand, the Court turns to the language of the contract in the case at bar.

---

**6.** Applying Rule 56 to a contract interpretation case, the Sixth Circuit recently concluded that an ambiguity does not preclude summary judgment:

> Summary judgment may be appropriate even if ambiguity lurks as long as the extrinsic evidence presented to the court supports only one of the conflicting interpretations. On the other hand, if the extrinsic

evidence relevant to the interpretation of an ambiguous contractual provision is contested or contradictory, summary judgment will often be inappropriate.

*GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 818–19 (6th Cir.1999) (quoting *Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 33 (1st Cir.1998)).

In paragraph 15, the letter of intent expressly states that, "the provisions of this letter *shall expire* upon the earlier of (a) the execution and delivery of a definitive Purchase Agreement by the parties hereto and (b) ninety (90) days after [VAC's and AGI's] acceptance of the terms of this letter, unless the parties shall otherwise agree." Jacobs Aff., Exhibit 1 at 15 (emphasis added). Whether a contract is ambiguous is a question of law which may be resolved summarily. *Parrett v. American Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir.1993). Under Kentucky law, a contract provision is ambiguous if it is susceptible to inconsistent interpretations. *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky.Ct.App.1994).

The language of expiration in this contract could not be more clear and the language in the other provisions of the contract supports this conclusion. The letter of intent forms "the basis upon which [the parties] shall mutually endeavor, promptly and in good faith, to consummate the Acquisition in accordance with the terms described herein." Jacobs Aff., Exhibit 1 at ¶ 15. The letter of intent was replete with deadlines, both mandatory and targeted, reflecting the parties' clear intent to proceed expeditiously with the proposed transaction. *Id.* at ¶¶ 6,7, & 15. The parties were to complete initial due diligence and determine whether to proceed with the acquisition as contemplated in the letter of intent within thirty days. *Id.* at ¶ 7. The parties hoped to enter into a definitive purchase agreement and TPA Agreement within sixty days of executing the letter of intent, and the parties expressly set a target date to that effect. *Id.* at ¶ 7. With an eye toward finality and acknowledging that the target date might not be realized, the parties set an additional, concrete termination date for the letter of intent. *Id.* at ¶ 15. The provisions of the letter expired within ninety days of accepting the letter of intent unless the parties executed a definitive purchase agreement on or before that date. *Id.* These terms are not susceptible to inconsistent interpretation. The terms clearly indicate that time was an essential element of the contract; after all, the contract provided for its own unconditional expiration.

Interpreting a contract that would remain in effect on an annual basis unless either party provided ninety days written notice of its intent to terminate, Kentucky's high court stated that it was *hardly necessary to discuss* whether time of notice was of the essence of the contract. *Distillery Rectifying & Wine Workers International Union of America*, 213 S.W.2d at 612. "While not expressed in exact words, it is to be gathered without difficulty that by strong implication the requirement of [ninety] days notice was essential, because termination or continuation depended upon the required notice." *Id.* at 613.

As if the terms were not conclusive enough, the parties' actions in response to those terms lend great support to the conclusion that time was an essential contract element. Kentucky courts have long recognized the old saying, "Show me what the parties did under the contract and I will show you what the contract means." *Thompson v. Fairleigh*, 300 Ky. 144, 187 S.W.2d 812, 816 (1945). On June 28, 2000, by express, written agreement, the parties extended the letter of intent's expiration date "to the close of business, Monday, October 2, 2000." *Defendants' Reply*, Exhibit 1, D.E. # 18. In an August 1, 2000 agreement extending certain deadlines and target dates in the letter of intent, the parties again recognized that "the *expiration date* referred to in clause (b) of paragraph 15 of the Letter of Intent shall remain as previously last agreed under our letter of June 28, 2000, i.e., the close of business, Monday, October 2, 2000." Ja-

cobs Aff., Exhibit 21 (emphasis added). On September 14, 2000, the plaintiff proposed another extension of the expiration date until November 2, 2000, *Id.* at Exhibit 29, but the defendants refused to grant it. *Id.* at Exhibit 33. "[A] new agreement between the parties extending the time is evidence that at the time of the making of the original contract time was regarded as of its essence." *Browning, 263 S.W.* at 663; *see also, Monarch v. Owensboro City R. Co.,* 119 Ky. 939, 85 S.W. 193, 195 (1905) (same); *Kentucky River Consol. Coal Co. v. Frazier,* 161 Ky. 374, 170 S.W. 986, 988 (1914) ("It is clear to us that time is the essence of this contract. The very fact that appellant thought it necessary to get an extension of time is sufficient to support this statement.").

Considering the briefs, affidavits and exhibits provided by both parties in a light most favorable to the plaintiff, the Court nonetheless concludes that time was an essential element in this contract. By its terms as amended, the contract expired on October 2, 2000.

**2. Completion of the Purchase Agreement Was Not Contingent on Closing Conditions**

■ The letter of intent provisions expired when the parties executed a definitive purchase agreement or on October 2, 2000, whichever came first. The parties do not dispute the fact that defendants agreed to prepare the transaction documents, including the purchase agreement and the TPA agreements. Notwithstanding this obligation, the defendants contend that FSI simply ran out of time before obtaining approval for the acquisition from the KDOI, and the defendants were not obligated to extend the deadline.[7] In response, FSI argues that, while the purchase agreement would include the customary closing conditions set forth in paragraph 5 of the letter of intent, the parties were not required to *satisfy* the closing conditions prior to executing the purchase agreement.

As the Court noted above, many of the closing conditions, which had to be included in the definitive purchase agreement, were subject to third-party approval or open terms. For example, the KDOI had to approve the proposed acquisition prior to closing, and the TPA and employment agreements had to be negotiated to the satisfaction of the parties thereto prior to closing. While the defendants reasonably may have been expected to draft a tentative purchase agreement prior to satisfaction of these conditions,[8] it is completely unreasonable to expect the defendants to *execute* a definitive purchase agreement without some assurance that these open terms would be satisfied. Courts traditionally refuse to assign an unreasonable construction to contract terms if a clear, reasonable interpretation exists and the alternative interpretation would leave ex-

7. At various points in their memoranda, as well as in the September 29, 2000 letter declining to extend the expiration date, defendants simply state that the letter of intent expired on October 2, 2000 without arguing that FSI "ran out of time." However, the defendants also state in the reply memorandum that FSI "ran out of time" and the plaintiff focused on this contention, so the Court will address the same.

8. Of course this expectation was not rooted in the contract terms; it was based on an extrinsic agreement that the parties apparently do not dispute. Moreover, defendants explained that the first step after completing initial diligence should be regulatory approval, not drafting transaction documents. Specifically, defendants stated that, given their reasonable reservations about the transaction as a whole, they believed it would not be cost effective to draft the transaction documents prior to KDOI approval. As of August 11, 2000, FSI clearly was on notice that defendants would not prepare a definitive purchase agreement prior to KDOI approval of the acquisition.

press terms, like the expiration of a contract, without effect. *See L.K. Comstock & Co.*, 932 F.Supp. at 967.

In mid July, the defendants asked FSI to release the name of the individual expected to run the proposed entity upon acquisition and expressed a desire to discuss FSI's proposed business plan with that individual. Jacobs Aff., Exhibit 19. FSI refused to release the names of CEO candidates, including the name of the individual who was actively considering the position. *Id.* at Exhibit 20. In mid September, the KDOI expressed *identical* reservations about the proposed entity's management and insisted that FSI release the prospective CEO's name. *Id.* at ¶ 24; *id.* at Exhibit 32. While regulatory approval may not have been a condition precedent to the execution of a definitive purchase agreement,[9] lack of regulatory approval certainly validated the defendants' concerns and justified their reluctance to execute a definitive purchase agreement. Otherwise, the executed, definitive purchase agreement might bind the defendants to an acquisition for which they had not bargained.

The letter of intent contemplated potential delays and apprehensions in the execution of a purchase agreement and rather than languish in negotiation limbo for an indefinite period of time, the letter of intent expressly expired on a date certain if the parties did not execute a definitive purchase agreement by that date. From the beginning, and throughout the course of performance, the parties knew that expiration of the contract was a real possibility. Absent bad faith, bar or waiver, the parties were in no way obligated to extend the expiration date regardless of the cause

for the underlying delay. Finally, and perhaps most importantly, expiration was automatic and did not require justification or fault on behalf of either party; therefore, the right of expiration "was not lost because of [defendants'] reason or motive for insisting upon its right." *General Electric Co. v. Chattanooga Coal & Iron Corp.*, 241 F. 38, 43 (6th Cir.1917). Neither the contract terms nor the parties' actions imply a different conclusion.

**3. Defendants' Refusal to Produce Transaction Documents Bars Them from Asserting That the Agreement Expired**

■ Next, the plaintiff argues that the defendants are barred from claiming that the contract expired because they undertook the responsibility to draft the purchase agreement yet failed to produce the document. Because the letter of intent expired on the earlier of October 2, 2000, or the execution of a definitive purchase agreement, whichever came first, plaintiff contends that defendants' failure to produce the purchase agreement precluded expiration by the latter alternative. As the plaintiff aptly noted in its brief:

> Where a contract is to be performed on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event; and if he is himself the cause of failure to perform the condition he cannot rely upon the condition to defeat his liability.

*Cowden Mfg. Co. v. Systems Equip. Lessors*, 608 S.W.2d 58, 61 (Ky.Ct.App.1980); *see also, United Mercantile Agencies v. Silver Fleet Motor Express*, 50 F.Supp. 602, 605 (W.D.Ky.1943).

---

**9.** Because the terms of the contract on this issue are not perfectly clear, the parties reasonably could interpret the contract as requiring regulatory approval prior to the execution of a definitive purchase agreement. Howev-

er, viewing the facts in a light most favorable to the non-movant, for the purpose of this motion, the Court concludes that regulatory approval was not a condition precedent.

This contract is unique. In paragraph 6, the parties set a sixty-day target date by which they are interested in entering into a definitive purchase agreement and TPA agreement. Of course this was not a deadline or an essential element of the contract because in paragraph 15, the parties expressly recognized and acknowledged that the purchase agreement *alone* may not be completed by that date. Interestingly, the letter of intent establishes a specific date *on which* the provisions of the letter shall expire rather than a date *by which* the parties must execute and deliver a definitive purchase agreement. Unlike paragraph 6, paragraph 15 speaks in terms of expiration rather than deadline; expiration is the clear focus of the closing paragraph.[10] To be sure, expiration by a date certain necessarily implies that if the definitive purchase agreement is to be executed, it must be executed before expiration. But it also necessarily implies that a definitive purchase agreement may *never be executed*, particularly when the letter of intent fails to identify any specific deadline for such execution.

At best, paragraph 15 states that the parties must execute a definitive purchase agreement, if at all, by the expiration date in the letter of intent. Nowhere in paragraph 15, or anywhere else in the letter of intent, are the parties bound to execute a

definitive purchase agreement by a certain date. Therefore, if by its terms the letter of intent can expire prior to execution of the definitive purchase agreement, then in reality, the parties are not bound to execute a definitive purchase agreement at all. *Cf., Rogers Bros. Coal Co.*, 1 S.W.2d at 540–41.

The "No–Shop" provision found in the letter of intent clearly explains the alternatives through which paragraph 15 released the parties from their obligations thereunder. Jacobs Aff., Exhibit 1 at ¶ 8. The parties remain bound "until the earlier of the execution and delivery of a definitive purchase agreement or such time as the transactions contemplated hereby are abandoned by the parties by an expiration...." *Id.* In other words, the parties had two distinct alternatives under paragraph 15; they could execute a definitive purchase agreement or they could abandon the transaction contemplated in the letter of intent. By the terms in the letter, abandonment by expiration was as much a condition of the contract as was execution of a definitive purchase agreement. Accordingly, the defendants' failure to produce draft purchase agreements can hardly be construed as a bar to claiming that the letter of intent expired.[11]

Even if execution of a definitive purchase agreement was somehow required

10. In addition, plaintiff referred to the date in paragraph 15 as the *expiration date* (not a purchase agreement deadline) when it drafted the supplemental agreements that first extended and subsequently acknowledged the expiration date. Jacobs Aff., Exhibit 21; *Defendants' Reply*, Exhibit 1, D.E. # 18. There is absolutely no evidence before the Court that the parties considered the expiration date in paragraph 15 to be anything other than an expiration date until two weeks before expiration when plaintiff colored the expiration date as a deadline to execute the definitive purchase agreement.

11. As illusory as the obligations may sound, plaintiff argued that the letter of intent consti-

tuted a contract, and the Court accepted that argument on its behalf for the purpose of this motion. To be sure, under paragraph 7, the parties do enter a binding commitment to proceed with the acquisition in accordance with the letter of intent, but the letter of intent necessarily includes the expiration term in paragraph 15. In essence, the parties crafted some sort of avant-garde mutual quasi-option contract through which the parties agreed to "mutually endeavor, promptly and in good faith, to consummate the acquisition in accordance with the terms described herein." Jacobs Aff., Exhibit 1 at ¶ 15.

by the letter of intent, defendants' failure to draft the purchase agreement was not a bar to an otherwise effective expiration term. As the Court already determined, the October 2, 2000, expiration date was an essential element of the letter of intent. Using that same line of cases, it is equally clear that the parties failed to state an exact time of execution for the definitive purchase agreement; therefore, the parties were required to execute the agreement in a reasonable amount of time. *See, e.g., Distillery Rectifying & Wine Workers International Union of America,* 213 S.W.2d at 612–13.

Due to the defendants' reservations about collateral and adequate management of the proposed entity, the defendants did not initially approve the letter of intent until August 4, 2000. Jacobs Aff., Exhibit 25. Even then, the defendants did not give the transaction their wholehearted stamp of approval. Instead, they expressly reserved their rights under the letter of intent, implicitly including the right of expiration, and asked the plaintiff to re-initiate and move forward with KDOI approval of the acquisition as soon as possible. On August 7, 2000, FSI asked for drafts of the transaction documents and on August 11, 2000, the defendants replied that the parties first needed to obtain any and all necessary approvals with the KDOI and

thereafter, with the New York Department of Insurance. Jacobs Aff., Exhibit 28. In the same letter, the defendants informed FSI that transaction documents were not required for KDOI approval, it would be imprudent in terms of cost to draft those documents prior to submission, and the letter of intent coupled with supplemental information would suffice to move consideration of the transaction forward with the KDOI. *Id.* at Exhibit 28. Plaintiff did not object to this position and the KDOI confirmed that the substitute documents would be sufficient for approval purposes. Moreover, the KDOI made both parties aware that an approval hearing likely would not occur before October 2, 2000.

By August 22, 2000, at the very latest, FSI knew that the defendants would not prepare transaction documents prior to KDOI approval of the acquisition.[12] On September 14, 2000, the parties learned that the approval hearing would take place on October 25, 2000, more than three weeks after the defined expiration date. Plaintiff then requested an extension of the expiration date until November 2, 2000 to allow for the public hearing and for defendant to draft the transaction documents. Jacobs Aff., at ¶ 23, Exhibit 29. Recognizing the shortness of time, plaintiff proposed November 2, 2000 as a date by which the parties could execute the definitive purchase agreement.[13] In so doing,

12. It is also important to note that an agreement to draft documents in not an agreement to execute documents. The defendants contend that the ambiguities discussed in II.B.3., *supra,* in conjunction with KDOI approval, served as obstacles to *their* execution of the definitive purchase agreement. In addition, when plaintiff learned in mid August that the defendants would not draft the documents prior to KDOI approval, the plaintiff could have drafted the purchase agreement and presented it to the defendants for execution, thereby removing any alleged obstacle to plaintiff's own performance. After all, plaintiff mentions in its memoranda that the pur-

chase agreement could be drafted quite easily based upon the letter of intent. By making this observation, the Court does not imply that the plaintiff was *required* to take these actions, but simply that it could.

13. As the Court noted before, this September 14, 2000 letter from the plaintiff was the first time either party had referred to the date in paragraph 15 as anything other than an expiration date. Nonetheless, "the contract is to be construed according to its tenor and terms and not by the evidence of what was in the mind of one of the parties." *Blue Diamond Coal Co.,* 49 S.W.2d at 335.

plaintiff necessarily conceded that October 2, 2000 was no longer a reasonable time by which the parties could execute the definitive purchase agreement.[14]

Sometime in late September, 2000, defendants learned from KDOI counsel that approval of the proposed acquisition was highly unlikely. Dempsey Aff., at ¶ 9. Accordingly, rather than pursue negotiations on an otherwise doomed transaction, they decided to exercise their express right of abandonment by expiration. As the letter of intent clearly and unambiguously contemplated, the provisions expired before the parties executed a definitive purchase agreement. The defendants' failure to draft the purchase agreement did not serve as an obstacle to execution of the documents within a reasonable time as purportedly required by the letter of intent. Instead, the definite and precise expiration date prevailed over the indefinite date by which the parties allegedly were required to execute the purchase agreement. *See generally, International Union of Operating Engineers,* 240 S.W.2d 49 (recognizing that in contract construction, the precise prevails over the indefinite).

### 4. Defendants Waived Expiration of the Letter of Intent

■ Plaintiff argues that the defendants, by their conduct, waived any right that they may have had to now assert that they are protected by the alleged expiration date. Waiver is the intentional relinquishment of a known right. It may be implied from conduct inconsistent with the assertion of that right. As the Kentucky Court of Appeals explained in *McDonald v. Burke:*

> The rule is well recognized that where a party with full knowledge, or with suffi-

cient notice or means of knowledge, of his rights and of all the material facts remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, although originally impeachable, becomes unimpeachable.

288 S.W.2d 363, 367–68 (Ky.1955).

The Court already explained that the expiration date contained in paragraph 15 was an essential element of the contract. In late June, the parties expressly extended the letter of intent's expiration date until October 2, 2000. *Defendants' Reply,* Exhibit 1, D.E. # 18. On August 1, 2000, the parties expressly acknowledged the October 2, 2000 expiration date in an agreement extending certain deadlines and target dates in the letter of intent. Jacobs Aff., Exhibit 21. Three days later, the defendants stated that *while they were not waiving any rights under the June 2, 2000 letter of intent, as amended,* they believed it would be appropriate for plaintiff to move forward with KDOI approval. *Id.* at Exhibit 25. The plaintiff now claims that the actions taken by the defendants after they expressly reserved their rights under the letter of intent nonetheless served as a waiver of the right to later assert that the contract had expired.

As the Court repeatedly has recognized, the letter of intent summarized the agreement between the parties as follows:

---

**14.** Of course questions of reasonable delay are typically left for the jury. The Court declines to set a date by which performance would have been reasonable had the contract not expired. Instead, based upon undisputed facts, the Court simply acknowledges a time by which plaintiff concedes performance could no longer reasonably be expected.

This letter, when executed by the parties hereto, shall form the basis upon which we shall *mutually endeavor,* promptly and in good faith, to consummate the Acquisition in accordance with the terms described herein. Once executed, the provisions of this letter *shall expire* upon the earlier of (a) the execution and delivery of a definitive Purchase Agreement by the parties hereto and (b) ninety (90) days after [defendants'] acceptance of the terms of this letter, unless the parties shall otherwise agree.

Jacobs Aff., Exhibit 1 at 15 (emphasis added). The parties agreed to strive to make the proposed acquisition a reality on one hand, while on the other hand they set a date on which the provisions of that agreement expired. By the terms of the contract, the defendants were *obligated* to work towards a successful acquisition until: (1) they executed a definitive purchase agreement; or (2) the contract expired. All the evidence provided by the parties supports the conclusion that defendants endeavored, in good faith, to consummate the proposed acquisition until the letter of intent expired. Not only does plaintiff's response fail to present any genuine issues of material fact as to waiver, it supports the conclusion that, by proceeding with regulatory approval, the defendants were satisfying a concurrent, mutual obligation as expressed in the letter of intent.[15]

Before proceeding with regulatory approval, the defendants expressly reserved their rights under the letter of intent, and as late as September 14 and 22, 2000, the plaintiff recognized that the letter of intent would expire on October 2, 2000 unless plaintiff was able to secure another extension of the expiration date. Although these facts clearly demonstrate that defendants did not waive their right of expiration and that the plaintiff did not rely on any action or promise to the contrary, plaintiff failed to address these facts, much less produce probative evidence that there was some doubt as to these material facts. Moreover, plaintiff does not offer one shred of evidence to support the contention that the defendants waived the express right of expiration under the contract through performance of a concurrent obligation under the same contract. Because the plaintiff did not present a factual dispute, the Court must conclude that defendants did not waive their right to abandon the contract by expiration based upon the actions and inactions taken to satisfy their concurrent and undisputed obligation to *support* the transaction. Accordingly, the Court will grant defendants' motion for summary judgment on plaintiff's claims that defendants breached their contractual obligations under the letter of intent.

### C. Promissory Estoppel

■ In addition to the detailed contract claims discussed above, plaintiff alleges promissory estoppel in the alternative. The parties agree that Kentucky courts have adopted the promissory estoppel doctrine as stated in the Restatement (Second) of Contracts § 90 (1965):

**15.** The plaintiff takes particular issue with the fact that defendants attended a meeting with plaintiff and the KDOI just five days before the letter of intent expired. In their defense, the defendants note that they allowed the letter of intent to expire because, days before expiration, they learned that KDOI approval was unlikely. The plaintiff offers no evidence raising a genuine issue of material fact as to the defendants' claim. The defendants pre-sumably would have gone through with the acquisition but for the fact that Dempsey shared his strong reservations about KDOI approval; accordingly, they were justified in pursuing the acquisition until the very end. Of course defendants' explanation only supplements the fact that defendants were already contractually obligated to endeavor to complete the transaction until the letter of intent expired.

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 11 (Ky.Ct.App., 1990) (citing *Meade Const. Co. v. Mansfield Commercial Elec.*, 579 S.W.2d 105, 106 (Ky.1979)). Accordingly, this Court must determine whether the plaintiff set forth a *prima facie* case of promissory estoppel.[16]

■ To state a claim for promissory estoppel, plaintiff must show that the defendants promised to sell VAIC and VAIA to the plaintiff with the intention or expectation that plaintiff would act on such a promise and that the plaintiff in fact relied on this promise to its detriment. *See id.* at 12 (citing *Gray v. Jackson Purchase Prod. Credit*, 691 S.W.2d 904, 906 (Ky.Ct. App., 1985)). In support of its promissory estoppel claim, plaintiff summarily relies on its arguments in favor of a contract that would support an identical claim. Examining each of these elements in conjunction with the evidence presented in plaintiff's response and viewing that evidence in a light most favorable to the plaintiff, it is clear that plaintiff cannot establish a *prima facie* case of promissory estoppel.

Other than the letter of intent, and the parties' actions in conformance therewith, plaintiff offered no evidence that the defendants promised to sell VAIC and VAIA to the plaintiff. The Court has gone to great lengths reviewing the letter of intent and the parties' actions in this case and found at best that the defendants conditionally promised to try to sell VAIC and VAIA to the plaintiff within a restricted period of time.

To be sure, this promise induced the plaintiff to try to acquire VAIC and VAIA, but the parties provided for two express remedies if the desired acquisition failed. First, the parties agreed to pay their respective costs and expenses in connection with the acquisition. Jacobs Aff., Exhibit 1 at ¶ 11. Second, the parties acknowledged throughout the letter of intent and their performance thereof that the acquisition may not occur. Therefore, the parties set an express date on which the promise to endeavor to sell VAIC and VAIA to plaintiff would expire. *Id.* at ¶ 15. The promise in this case can only be construed as a promise to endeavor to sell VAIC and VAIA to the plaintiff before expiration of the letter of intent and reliance by the plaintiff beyond those parameters would be unjustified even if it could be proven. *See McCarthy*, 796 S.W.2d at 12–13 (citing *Lynch v. Dawson Collieries, Inc.*, 485 S.W.2d 494, 496 (Ky.1972) for the proposition that promissory estoppel is inappropriate where there is "no evidence of a promise nor any evidence of reliance that could be expected or even justified under the facts."). In addition, because the parties defined and exercised their own remedies for potential failure of the promise, promissory estoppel is both unnecessary and inappropriate. The Court will grant

---

**16.** As noted above, plaintiff plead promissory estoppel in the alternative to its claims under the contract. Promissory estoppel "cannot be the basis for a claim if it represents the same performance contemplated under a written contract." *Tractor and Farm Supply v. Ford New Holland*, 898 F.Supp. 1198, 1205 (W.D.Ky.1995) (applying a mix of Kentucky and Michigan law). For the purpose of the contract claims, the Court assumed that the parties had an enforceable contract to endeavor to consummate the acquisition in accordance with the terms of the letter of intent. However, the Court did not assume that the defendants made a promise to sell VAIC and VAIA to FSI. Accordingly, viewing the facts in a light most favorable to the plaintiff, the Court will consider plaintiff's alternative promissory estoppel claim as if no contract existed.

defendants' motion for summary judgment on plaintiff's alternative promissory estoppel claim.

## III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that:

(1) defendants' motion for summary judgment [D.E. # 13] is **GRANTED;**

(2) plaintiff's motion to strike the arguments raised in defendants' reply [D.E. # 19] is **DENIED AS MOOT;**

(3) defendants' motion to amend the answer and counterclaim [D.E. # 32] is **GRANTED** and the Clerk of the Court **SHALL FILE** the tendered amended answer and counterclaim;

(4) defendants' motion for leave to file supplemental information on defendants' motion for summary judgment [D.E. # 36] is **DENIED;**

(5) plaintiff's objections to the defendants' use of depositions and exhibits [D.E. # 44] is **DENIED WITHOUT PREJUDICE** to the right to refile if defendants maintain such a position with regard to counterclaims;

(6) the March 1, 2002 order of this Court [D.E. # 45] is **HEREBY AMENDED** as follows: the defendants **SHALL FILE** a status report regarding the counterclaims raised in the defendants' amended answer by March 22, 2002;

(7) summary judgment in favor of defendants Asset Guaranty Insurance Company and Van–American Companies, Inc., will be entered upon resolution of the defendants' counterclaims; and

(8) this opinion and order is interlocutory in all respects.